DRAPER (PROUTY v.). See Cases Nos. 11,-446 and 11,447.

DRAPER (SMITH v.). See Case No. 13,037.

## Case No. 4,073.

### DRAPER et al. v. WATTLES.

[3 Ban. & A. 618; [1] 16 O. G. 629.]

Circuit Court, D. Massachusetts. Oct. 9, 1878.

PATENTS—PRIOR USE AND SALE—REISSUES.

1. Where a reissue contains nothing that might not have been claimed in the original patent, it is not for a different invention.

2. The mere deposit of a model in the patent office will not warrant an inference that the model was accompanied by an application for a patent.
 [Cited in Henry v. Francestown Soap-Stone Co., 2 Fed. 81.]

3. Section 7 of the patent act of March 3, 1839 [5 Stat. 353], as amendatory of that of July 4, 1836 [5 Stat. 117], construed to imply that the purchase, sale, or prior use, etc., of an invention, in order to defeat a patent, shall have been with the knowledge and consent of the inventor.
 [Cited in Campbell v. Mayor, etc., of New York, 9 Fed. 504; The Driven-Well Cases, 16 Fed. 411.]

4. The prior sale, purchase, or use of the thing patented, necessary to defeat the patent, discussed.
 [Cited in Anderson v. Hovey, 124 U. S. 712, 8 Sup. Ct. Rep. 682.]

5. Whether it is enough to prove that the inventor has sold an earlier and less perfect article, where the thing sold, although within the claim of the patent, is not the whole of the patented invention, quaere.
 [Cited in Henry v. Francestown Soap-Stone Co., 2 Fed. 79. Applied in Campbell v. Mayor, etc., of New York, 47 Fed. 521.]

Chauncey Smith and Thomas L. Livermore, for complainants.

Thomas L. Wakefield and D. Hall Rice, for defendant.

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

LOWELL, District Judge. The complainants [George Draper and others] allege that the respondent [Joseph W. Wattles] infringes three patents. The first and principal patent is reissue No. 6,386, granted in 1875, the original being No. 89,025, dated in 1869, for an improvement by William T. Carroll in spinning-frames, described as an improved ring for such frames, composed of a thin cylindrical body or annulus, of substantially uniform thickness, and having races projecting from each end of the annulus.

The specification describes and illustrates the mode of constructing and using this ring. It declares that "this double ring"—that is to say a ring with a race at each end of the annulus—"can be made cheaper than can the ordinary spinning-ring with a shank to fit the ring-rail, and the weight of the double ring, as constructed, is but little in comparison with the weight of the ordinary ring, and this saving of weight, and consequently of metal, is of importance, because it is a saving in the cost of manufacture, and the weight of the ring-rail is decreased materially." The specification also contains the following: "The cylindrical body c is preferably of a length just sufficient to allow the traveller, when running on race a or b, to pass freely; and this improved ring is very light and compact."

The first and second claims are: "1. A spinning-ring composed of an annulus and two connected races, substantially as described." "2. The combination of a ring having two races with a ring-rail, and with holding devices carried by the rail, to operate in connection with the lower or unused race, and confine the ring to the rail and about the spindle-receiving passage through the rail, substantially as and for the purpose described."

For the purposes of this case infringement is admitted, or rather it is admitted that the defendant makes spinning-rings and holding devices, the former of which is exactly the ring drawn and described in the patent, and the latter are testified to be well known equivalents of the plaintiffs' holding devices.

The first objection, that the reissue is fraudulent and void upon its face, when considered with the state of the art, is not sustained, as we intimated at the argument, because the description is all in the original patent, and the reissue claims nothing which might not have been claimed in that patent.

The second and most formidable objection is, that the patentee, Carroll, invented the ring with two races in 1857, and permitted one specimen to be used for a long time at or about that year; and then he sold two sets of such rings in 1866, about six months more than two years before he applied for his patent, which they say is June, 1868.

The evidence tends to show that the inventor did make two rings like Exhibit D more than ten years before June, 1868, and that one of them was probably used as alleged; but whether it was used with the inventor's consent is very doubtful, and, at this distance of time, difficult to prove or disprove. He denies that he either consented to or knew of the use. It seems to us to be proved by a preponderance of the evidence that Carroll sold two sets of double-raced rings early in 1866, and that they were like Exhibits D and F, one or both. He swears that he made the sale in order to discover how the rings would wear in use. The complainants argue that they can carry back the application by evidence that the patentee employed a solicitor, who filed a model in the patent office at a certain time; but, in the absence of evidence of anything beyond this, we cannot infer that the model was accompanied by an application. That the use was experimental is sworn to by the inventor, and there is ground for saying that an invention of this sort can be best tested by actual use in a mill; therefore, if the inventor does not happen to own a mill, he must make use of that of another person.

In the recent case of City of Elizabeth v. Nicholson Pavement Co., not yet reported [97 U. S. 126], the supreme court held that if the use was fairly and honestly experimental, and publicity was essential to the experiment, it would not vitiate the use; and it was said in that case that the inventor might properly enough take payment for the use. Still it is somewhat difficult for a court to qualify, by a supposed intention, not declared at the time, the act of an inventor who sells the patented article on two occasions, apparently in the ordinary course of trade.

The next point taken by the complainants we consider to be sound. The ring which Carroll sold was not the completed and most perfect form of his invention. We think it very doubtful whether in that form the ring would have gone into general use, and that the last and patented article would not be a patentable improvement upon it. The law, at the date of the patent, made it essential to its validity that the improvement should not have been in public use or on sale for more than two years, with the consent and allowance of the inventor. Stat. July 4, 1836, §§ 6, 7, 15 (5 Stat. 119, 123); and Stat. March 3, 1839, §§ 6, 7 (5 Stat. 354). This last section provides that every person or corporation who has, or shall have, purchased or constructed any newly invented machine, etc., prior to the application by the inventor or discoverer for a patent, shall be held to possess the right to use, and vend to others to be used, the specific machine, etc., so made or purchased, without liability therefor to the inventor or any other person interested in the invention; and that no patent shall be held to be invalid by reason of such purchase, sale, or use prior to the application for a patent as aforesaid, except on proof of abandonment of such invention to the public, or

that such purchase, sale, or prior use has been for more than two years prior to such application for a patent. There is nothing in this section requiring that the sale or use shall be with the consent or allowance of the inventor; but, as that qualification is found in all three of the sections of the act of 1836, to which this is an amendment, and is reasonable, it has always been understood to apply to the sale or use mentioned in this section. The sale or use, to defeat the patent, must have been of the thing patented; and we are of opinion that, in order to defeat the patent, it is not enough to prove that the inventor has sold an earlier and less perfect article—that is, less perfect in the sense of the patent law, even if the thing sold would be within the claim of the patent. In other words, the ·test is not, necessarily, whether the article sold would infringe the invention by embodying a part of it, but whether it is the invention—that is, embodies the whole of it. The law does not intend to say that a patentee dedicates to the public whatever he sells more ·than two years before he applies for a patent, but that he dedicates his invention if he sells it for that period.

Of course a mere formal or colorable change to escape the consequences of his own acts would not protect him; nor could he enjoin the use of any specific thing which he had sold; but we are unprepared to say that he might not prevent the general public from using the same sort of thing, if it is included in his new and completed machine or other invention. In this case it is not necessary to decide the full scope of this suggested argument, because the defendant makes the ring which is patented, and which we consider patentable, notwithstanding Exhibit D, if that ·be considered as dedicated to the public.

The next patent is that of Knight, No. 108,-270, for the holder or supporter of a spinning-ring, with its peripheral cuts arranged obliquely to the circumference of the sup-·porter, and relatively to the motion of the traveller, as described. A good deal of evidence has been· taken touching the utility ·and mode of operation of this invention, and on the question of infringement. The defendant makes holders with cuts at a different angle from those shown in the patent and drawings. They, however, come within the ·description and claim, and we think they were intended to operate, and that they do operate, to produce a like result, and do infringe.

The third patent is that to Marsh, No. 118,-·622, for the cut or kerfed and rabbeted ring-supporter, where the rabbet is cut under or dovetailed. as described. The principal part of the evidence as to this patent has been concerning infringement. With magnifying glasses and calipers, and other proper contrivances. some witnesses find that the defendant's supporters are cut under. and others that they are not. We think the evidence of infringement brings the case to too fine a

point, and within the range of those minute things which defy the judgment of a court.

Interlocutory decree for the complainants on two of the patents, reissue No. 6,386, and No. 108,270.