## SMITH & DAVIS MANUF'G CO. v. MELLON.

### (Circuit Court of Appeals, Eighth Circuit. October 30, 1893.)

### No. 186.

**1. APPEAL—OBJECTIONS NOT RAISED BELOW.**

The objection that the defense, to a suit for infringement of a patent, of prior public use, was not well pleaded, in that the answer failed to allege that such use was "in this country," as the statute provides, (Rev. St. § 4920, cl. 5,) cannot be raised for the first time on appeal.

**2. PATENTS—ABANDONMENT—PRIOR PUBLIC USE.**

The advertising and sale by a manufacturer of an invention, to test the market, and to see how it would sell, is a trader's and not an inventor's experiment, and such use will not carve an exception out of the statute making prior public use a defense to a suit for infringement, (Rev. St. § 4920, cl. 5.)

**3. SAME.**

Where the only difference between an invention of a spring bed consisting of a bank of wire springs fastened together at top and bottom by a series of lateral and crosswise tie rods and hooks, as manufactured and sold by the inventor more than two years prior to his application for letters patent, and that as claimed in his specifications, was in "a more desirable means of locking the tie loops," to which means he did "not desire to be confined," prior public use is a good defense to a suit for infringement. 52 Fed. 149, affirmed.

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

In Equity. Bill by the Smith & Davis Manufacturing Company against Peter H. Mellon for infringement of letters patent. Bill dismissed. 52 Fed. 149. Complainant appeals. Affirmed.

William M. Eccles, for appellant.

George H. Knight, for appellee.

Before BREWER, Circuit Justice, and SANBORN, Circuit Judge.

BREWER, Circuit Justice. This case is before us on an appeal from a decree of the circuit court of the United States for the eastern district of Missouri, dismissing the plaintiff's bill. The suit was one for the infringement of a patent, that patent being No. 269,242, dated December 19, 1882, issued to John G. Smith, and by him assigned to complainant, and was for an improvement in spring beds. The ground on which the circuit court dismissed the bill was that the invention covered by the patent had been in public use and on sale for more than two years prior to the date of the application, and that for this reason the patent was void. 52 Fed. 149. Counsel for the appellant insists that this defense was not properly presented by the pleadings, and, therefore, that all testimony tending to support it should be ignored; further, that the only use disclosed by the testimony was an experimental one, and therefore not such as to avoid the patent; and, finally, that the precise invention for which the patent was obtained was not in use or on sale prior to the application for the patent.

With reference to the first of these propositions but a word is necessary. The statute (Rev. St. § 4920, cl. 5) provides for, among

other special defenses to a suit for infringement, this: that the invention has "been in use or on sale in this country for more than two years before his application for a patent." The answer set up "that the alleged invention was in public and common use, and on sale, with and by the knowledge and consent of the patentee, for more than two years before the application." It did not in terms allege that such public use was "in this country," as the statute provides. While this defense may not have been pleaded with technical accuracy, yet the testimony tending to establish it was received on the final hearing without any objection. The first time the question has been raised, as appears from the record, is on the argument of the appeal in this court; and here it is too late. Roemer v. Simon, 95 U. S. 214, 220; Loom Co. v. Higgins, 105 U. S. 580, 595.

That the invention covered by the patent, or at least something very similar to it, had been in use and on sale for more than two years prior to the date of the application, does not admit of doubt; and that such use was not an experimental one seems to be clear from the testimony. The application for a patent was on October 14, 1882. In the spring of 1880, J. G. Smith & Co., the predecessors of appellant, were engaged in the manufacture and sale of bed bottoms. In the catalogue issued by them in March, 1880, there is described and advertised what is called "No. 27;" and the testimony of the patentee, a member of the firm, is that during the years 1880 and 1881 they sold quite a number of them,—probably 200 or 300, and possibly 500,—50 or more having been sold before the 14th of October, 1880. In that catalogue, beneath the cut of No. 27, were these words:

"In offering our No. 27 to the trade, we recognize the growing demand for an all-wire spring bed. After a long series of experiments, we have been able to produce a bed which is unequaled for cheapness, lightness, durability, and comfort. Mattress manufacturers will find this an excellent bed to upholster."

The patentee testified, in answer to a question as to whether the sales made in 1880 and 1881 were as an experiment or for gain, that "the sales were made as an experiment, as we do with everything else we get up; to put it on the market to see how the trade will take it; to see how it will take with the trade,"—and in response to a further question, as to what arrangement or understanding was had with the purchasers about the beds giving satisfaction, made this reply: "I had the understanding that, if any of them did not give satisfaction, they could return them, and I would replace them with the latest improvement of that or other beds; so they were satisfied." It is scarcely necessary to refer to the testimony offered by the defendant, tending to show that some at least of these sales were made in the ordinary course of business, and without any conditions named or suggested, and that a market was sought for the goods precisely as for other manufactured articles; for, upon the testimony of the patentee himself, it is obvious that what was done in the spring and summer of 1880 was not for the mere purpose of "experiment," as that term is used in patent law. The invention was one which the inventor could have tested in his own home, and

by use in his own family. He did not sell simply one or two, and wait to see how they satisfied the purchasers or what defects were discovered by them; but the firm of which he was a member invited the public to buy, representing the beds to be unequaled, and continued to manufacture and sell them from month to month and from year to year, in the same manner as any other article in their stock was manufactured and sold; and each sale was made at a profit, and with the contemplation of a profit. The experiment was not a testing for the purpose of discovering defects and perfecting the invention, but a testing of the market, and to see how the article would sell, or, as the inventor said, "to see how it will take with the trade." It was a trader's, and not an inventor's, experiment. Such a use does not carve an exception out of the statute. See the following cases: Elizabeth v. Pavement Co., 97 U. S. 126; Egbert v. Lippmann, 104 U. S. 333; Manning v. Glue Co., 108 U. S. 462, 2 Sup. Ct. 860; Manufacturing Co. v. Sprague, 123 U. S. 249, 8 Sup. Ct. 122; Andrews v. Hovey, 123 U. S. 267, 8 Sup. Ct. 101; Root v. Railroad Co., 146 U. S. 210, 13 Sup. Ct. 100. In Egbert v. Lippmann (page 336) it was said by the supreme court:

"We observe, in the first place, that, to constitute the public use of an invention, it is not necessary that more than one of the patented articles should be publicly used. The use of a great number may tend to strengthen the proof, but one well-defined case of such use is just as effectual to annul the patent as many. McClurg v. Kingsland, 1 How. 202; Fruit-Jar Co. v. Wright, 94 U. S. 92; Pitts v. Hall, 2 Blatchf. 229. For instance, if the inventor of a mower, a printing press, or a railway car makes and sells only one of the articles invented by him, and allows the vendee to use it for two years, without restriction or limitation, the use is just as public as if he had sold and allowed the use of a great number."

And in Manufacturing Co. v. Sprague, 123 U. S. 264, 8 Sup. Ct. 122. this rule as to the character of the testimony was laid down:

"In considering the evidence as to the alleged prior use for more than two years of an invention, which, if established, will have the effect of invalidating the patent, and where the defense is met only by the allegation that the use was not a public use in the sense of the statute, because it was for the purpose of perfecting an incomplete invention by tests and experiments, the proof on the part of the patentee, the period covered by the use having been clearly established, should be full, unequivocal, and convincing."

Finally, it is insisted that the patented invention is substantially different from that manufactured and sold in 1880. In the language of counsel:

"The bed bottom used by Smith prior to October 14, 1880, was not the same invention patented by him, but was an imperfect, immatured, impractical, and unsuccessful bed bottom, and a mechanical and commercial failure, and wholly a different mechanical structure from the one patented, both in its results and construction."

The invention, it may be said in a general way, consisted of a bank of wire springs fastened together at both top and bottom by a series of tie rods and hooks, running laterally and crosswise. These tie rods and hooks, and the upper and lower coils of the springs to which they were attached, formed, as it were, two horizontal planes, kept apart by the intervening springs. A pressure upon any part of the upper plane was met, not simply by the resist-

ance of the particular spring under the place of pressure, but, by reason of the hooks and tie rods, was distributed upon the surrounding springs. These hooks and rods were therefore important factors in keeping the springs in place, and thus securing the stability of the bed. In both the bed manufactured and sold in 1880 and that described in the patent the hooks were formed by an extension of the upper coils of the springs. In the latter this extension was carried round the next lower coil, making what is called a "closed head," while in the former it was not so carried round. But this change does not seem to us a vital one, nor was it apparently so regarded by the patentee. In the specifications he says: "The hooks, b, b, are preferably an extension of the upper coil, being carried around the next lower coil, and then extended in the form of a hook." And, again: "The hooks, b, b, are the most desirable means for locking the tie loops, C, C, to the springs; but I do not desire to be confined thereto, as other means can be used to fasten the ties, C, C, to the springs." The manner of tying was evidently not of the substance of the invention.

In conclusion it may be said that the matter of obtaining a patent was an afterthought, and one that came too late to be of any avail to the patentee, even if there was in the construction of the bed such a display of inventive skill, and such novelty and utility, as gave a right to a patent, and of that we express no opinion.

The decree is affirmed.