SWAIN v. HOLYOKE MACHINE CO.

(Circuit Court of Appeals, First Circuit.  May 24, 1901.)

No. 353.

1. PATENTS—PRIOR PUBLIC USE—SALE BY PATENTEE.

    A single unrestricted sale by a patentee of a machine embodying his invention, for actual and practical use by the purchaser, more than two years before the filing of the application, constitutes a public use or sale, within Rev. St. § 4886, which will invalidate the patent, unless it is clearly shown that the principal purpose of the sale was experimental, with a view of testing and perfecting the invention.

2. SAME—TURBINE WATER WHEELS.

    The Swain patent, No. 535,467, for turbine water wheels, as to claims 1 and 3, is void because of prior public use of the invention; and claim 2 is void because the distinctive feature therein shown lacks of invention.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

Charles F. Perkins (Charles H. Drew, on the brief), for appellant.
Elmer P. Howe (Benjamin Phillips, on the brief), for appellee.

Before COLT and PUTNAM, Circuit Judges, and WEBB, District Judge.

COLT, Circuit Judge. This appeal relates to letters patent No. 535,467, granted to Asa M. Swain, the complainant, for a turbine water wheel. The application was filed January 10, 1881, and the patent issued March 12, 1895, 14 years thereafter. Only the first three claims are in issue.

The court below dismissed the bill on the ground that there had been an unrestricted sale of the patented machine embodied in claims 1 and 3 more than two years prior to the application (Rev. St. § 4886), and that claim 2 involved no invention over claim 3.   102 Fed. 910.

The evidence on the question of public use or sale is not controverted. It is carefully summarized in the opinion of the circuit court. The fact of an unrestricted sale more than two years before the application for the patent is undisputed. The application was dated January 10, 1881, and a turbine water wheel machine embodying the substantive invention of the patent was sold, installed, and put in operation at Moodus, Conn., by the patentee, on or before January 6, 1879.

The complainant seeks to overcome the bar of the statute on two grounds: First, that the Moodus machine was incomplete; second, that the sale was for the purpose of experiment.

In order to ascertain whether the Moodus machine contained Swain's complete invention, it is necessary to point out what the invention was for which the patent issued.

At the date of the Swain invention it was old to mount two turbine wheels on a horizontal shaft, which discharged the water outwardly through separate educts. It was also old to mount two turbine wheels on a horizontal shaft, which discharged the water inwardly into a common educt. The inward-discharge machine was not as efficient as the outward-discharge machine, by reason of the conflict of the two streams of water in the common educt. To overcome this disadvantage, Swain conceived the idea of maintaining the separation of the two streams by means of a central partition. Dividing the educt by a central partition of greater or less length, but of sufficient length to break or check the action of one stream against the other by wholly or partially separating the two streams, is the sum and substance of Swain's invention. It is not pretended that the patented machine is more efficient than the outward-discharge machine. It does not represent any marked advance in the art. Its only purpose is to economize space. The outward-discharge machines, by reason of the larger space they occupy, cannot be used in certain localities. The inward-discharge machines are more compact, and can be set up in places not adapted to the other class of machines. For this reason only it was important to devise an inward-

discharge machine of the same efficiency as the outward-discharge, and this was the problem which Swain undertook to solve by his central partition in the educt.

In an argument filed in the patent office, Swain states the essence and scope of his invention in the following words:

"It is desirable to inquire just what is the actual invention made by the applicant which is involved in the combinations claimed; what constitutes the advance which he made over the previous art,—in order to see what parts are the essence of the invention. The union of two wheels in one machine, discharging their streams towards each other without conflict, is the gist of the invention, and only such features as are essential to that are material parts of the combination. The wheels must be vertical, but the construction of the floats, the guides, gates, etc., may be any one of various patterns; there must be an educt located between the wheels, but the shape, dimensions, and mode of construction of the pipe or pipes forming the educt may be greatly varied from the precise form shown in the figures of the drawings, and still retain the essential character required."

In another communication to the patent office, Swain says:

"His invention does not consist in an improvement in means heretofore used for separating the streams of water, because none was ever known; not in a modification of somebody's else partition, but in the partition itself; and whoever uses such, however small or however shaped, in the combination as set forth, that does in fact obviate to any extent the evil named, employs the applicant's invention, at least, however much he may add something of his own or others."

The specification of the patent likewise declares that the invention is for the central partition:

"I am aware that double vertical turbines have been made, discharging towards each other into a common receptacle, but without any partition or depression, curved, or otherwise to break the direct action of one stream against the other, thereby causing serious loss of efficiency; this defect being completely remedied by my partition, extending downward, and forming a continuation of the double quarter turn, A, A, in the educt. It is obvious that this partition may be shortened or lengthened in the educt at the pleasure of the constructor, but it should be remembered that when it is made quite short it will develop its full utility only when both wheels are being operated above one-half of their full capacity. Any partition, however short, or any construction of the interior of the educt which breaks or checks the action of one stream against the other, is within the spirit of my invention. The extent of the partition is simply a matter of degree in the application of the invention."

The first claim of the patent is for any educt chamber or receptacle so constructed as to form a partition, whereby the direction of the stream from each wheel is diverted, and the action against the stream of the other wheel is wholly or partially obviated:

"(1) Two vertical turbine water wheels in one machine, discharging their effluent water towards each other, combined with a common receptacle into which the water from both wheels is discharged, said receptacle being so constructed on the inside as to form a partition or obstruction therein, located between the wheels, whereby the direction of the stream from each wheel is diverted, and its action against the stream of the other wheel is wholly or partially obviated, substantially as described."

The third claim is more specific, in that it provides for a dividing partition which curves outwardly and downwardly:

"(3) The combination of two turbine wheels provided with a surrounding flume case and induct passages, and arranged to discharge the water into

a common educt passage located between them, and provided with a dividing partition which curves outwardly and downwardly from each wheel, substantially as described."

In the second claim the partition is extended through the draft pipe:

"(2) Two turbine wheels provided with a surrounding flume case and induct passages, each wheel discharging its effluent water into a quarter turn, A, having its top surface curved outwardly and downwardly from said wheel, said quarter turns being located between the wheels, in combination with said quarter turns. A, A, and a draft pipe, O, having a vertical partition, i, throughout its entire length, which is practically a continuation of the central walls between the quarter turns, whereby the entire educt is divided into two separate passages, substantially as described."

As the patentee declares that his invention is for a central partition of greater or less length in the educt chamber, and that "the extent of the partition is simply a matter of degree," it is manifest that the extension of the partition through the draft tube involves no invention. This claim merely describes a form of construction, and it is obvious that the complete invention is embraced in a machine which does not have this extension.

The alleged incompleteness of the machine installed at Moodus relates to the feeder and draft pipe. The purchaser of that machine contemplated an enlargement of its mill, and the machine set up by Swain was of sufficient capacity to meet this new requirement. As a temporary matter, however, the machine was connected with the feeder and draft pipe of the old water wheel, which were too small to enable the new machine to operate in the best manner, or fully to test its efficiency. It was to this extent only that the Moodus machine was imperfect. It included, however, in its construction, the complete and completed invention of Swain. That invention consisted in a very simple addition to an old and well-known structure. The inventor, a man of large experience in this art, had at this time a full conception of his invention and of the way the machine should be built. He knew, of course, that the connecting pipes were too small. He told the purchaser that, while the machine would probably answer the purpose of running the old mill, there would be "disturbances" arising from the smallness of the draft tube. It is evident to any one that the draft tube, which is merely an extension of the educt, should be of the same diameter at the point where the two are joined, and that the water would not discharge so freely if there were an abrupt contraction of the outlet at this point.

As there is found in the Moodus machine the full and perfected invention of Swain, the circumstance that he connected the machine with a feeder and draft pipe of insufficient size is immaterial. If the machine, under the circumstances presented in this case, contained the invention in its finished form, the inventor cannot relieve himself from the consequences which follow by showing that it was installed by him with imperfect connections. This is not the case of an invention which had not reached a state of perfection or completion at the time the sale was made, but it is a case where the inventor intended to sell, and did, with a full knowledge and understanding of his invention, sell, a machine which embodied his whole

invention, and then proceeded to set it up in such a way that it would not operate to the best advantage.

But it is insisted that the sale of the Moodus machine was for the purpose of experimental use, and this is the main ground on which the complainant seeks to avoid the statutory prohibition. We have seen that Swain's real invention, which is covered by claims 1 and 3 of the patent, consisted in placing a central partition in the common educt, and that this invention is found in the Moodus machine. The sale of this machine by the inventor was absolute, unconditional, and for a valuable consideration. As a general rule, a single unrestricted sale by the patentee of his patented device, embodying his completed invention, is a public use or sale, within section 4886 of the Revised Statutes. Egbert v. Lippmann, 104 U. S. 333, 336, 26 L. Ed. 755; Fruit-Jar Co. v. Wright, 94 U. S. 92, 94, 24 L. Ed. 68; Hall v. Macneale, 107 U. S. 90, 96, 97, 2 Sup. Ct. 73, 27 L. Ed. 367; Henry v. Soapstone Co. (C. C.) 2 Fed. 78, 80; Sinclair v. Backus (C. C.) 4 Fed. 539, 543; Manufacturing Co. v. Mellon, 7 C. C. A. 439, 58 Fed. 705–707; Delemater v. Heath, 7 C. C. A. 279, 58 Fed. 414, 416, 417; Manufacturing Co. v. Sprague, 123 U. S. 249, 257, 8 Sup. Ct. 122, 31 L. Ed. 141.

There are undoubtedly cases where the strict application of this rule works great hardship. Some inventions are for large and costly structures, others require a long period of time to test their practical utility, and still others are for small devices which are attached to large machines. It follows that an inventor, from lack of means or other circumstances, may be forced to sell his patented device in order to test its utility or efficiency. For this reason the courts in some instances have declined to enforce the strict rule where the sale was attended by some exceptional circumstance. The following cases illustrate the exceptions to the general rule: Where the sale of the machine was for the purpose of trial, and the machine was warranted. Graham v. McCormick (C. C.) 11 Fed. 859, 862, and Same v. Manufacturing Co., Id. 138, 142. Where the patentee derived no profit from the sale, and the device was a mere appendage to a large machine sold by his employer. Harmon v. Struthers (C. C.) 57 Fed. 637. Where the sale was made at an under price, and without profit to the inventor, and for the purpose of securing a fair test of the invention. Innis v. Boiler Works (C. C.) 22 Fed. 780. Where an imperfect machine was sold, which did not embody the invention. Eastern Paper-Bag Co. v. Standard Paper-Bag Co. (C. C.) 30 Fed. 63, 66. Where the device sold did not embody the most complete and perfect form of the invention. Draper v. Wattles, 3 Ban. & A. 618, 620, Fed. Cas. No. 4,073.

We should hesitate to lay down the broad proposition that a single sale of a patented device for experimental purposes works a forfeiture of the patent under the statute. We do not understand that it has ever been so expressly decided by the supreme court. It is certainly doubtful whether, under such circumstances, the device can be said to be "on sale," within the fair meaning of the statute. It does not follow that, because a machine has been sold, it has passed the experimental stage. In Hall v. Macneale, 107 U. S. 96, 97, 2 Sup.

Ct. 73, 27 L. Ed. 367, it was assumed by the court that the experimental stage still existed, although there had been several sales. Instead of laying down a fixed rule, it seems to us that in each case the court should direct its attention to the fundamental inquiry: Under what circumstances and for what purpose did the public use or sale take place? And, where it appears that there has been a public use or sale more than two years before the application, the burden is thrown upon the patentee to establish, by full, clear, and convincing proofs, that such use or sale was principally and primarily for experimental purposes, and that such purposes were not merely incidental or subsidiary. Whatever expressions may be found in the opinions of the supreme court to the effect that a single sale comes within the statutory prohibition, we think a careful examination of the cases shows that the primary and governing consideration is the purpose and object of the inventor in making such sale.

In Fruit-Jar Co. v. Wright, 94 U. S. 94, 24 L. Ed. 69, where several of the patented articles were sold to get the money which they yielded, and to test their salability in the market, Mr. Justice Swain, speaking for the court, after discussing the statute and the authorities, said:

"The result must always depend upon the purpose and incidents accompanying the act or acts relied upon."

In Egbert v. Lippmann, 104 U. S. 337, 26 L. Ed. 756, where the patentee gave away several pairs of the patented device, the court said:

"They were not presented for the purpose of experiment, nor to test their qualities. No such claim is set up in her testimony."

In Hall v. Macneale, 107 U. S. 96, 97, 2 Sup. Ct. 79, 27 L. Ed. 369, which was a case of sale by the patentee, the court observed:

"It is contended that the safes were experimental, and that the use was a use for experiment. But we are of opinion that this was not so."

In Elizabeth v. Pavement Co., 97 U. S. 126, 133, 24 L. Ed. 1000, 1004, Mr. Justice Bradley, speaking for the court, said:

"To determine this question [public use], it is necessary to examine the circumstances under which this pavement was put down, and the object and purpose that Nicholson had in view."

We think the true rule, whether it is a case of public use or sale by the patentee, is stated by the supreme court in Manufacturing Co. v. Sprague, 123 U. S. 256, 8 Sup. Ct. 126, 31 L. Ed. 143:

"A use by the inventor, for the purpose of testing the machine, in order by experiment to devise additional means for perfecting the success of its operation, is admissible; and where, as incident to such use, the product of its operation is disposed of by sale, such profit from its use does not change its character; but where the use is mainly for the purposes of trade and profit, and the experiment is merely incidental to that, the principal and not the incident must give character to the use. The thing implied as excepted out of the prohibition of the statute is a use which may be properly characterized as substantially for purposes of experiment. Where the substantial use is not for that purpose, but is otherwise public, and for more than two years prior to the application, it comes within the prohibition."

"In considering the evidence as to the alleged prior use for more than two years of an invention, which, if established, will have the effect of

invalidating the patent, and where the defense is met only by the allegation that the use was not a public use in the sense of the statute, because it was for the purpose of perfecting an incomplete invention by tests and experiments, the proof on the part of the patentee, the period covered by the use having been clearly established, should be full, unequivocal, and convincing." 123 U. S. 264, 8 Sup. Ct. 130, 31 L. Ed. 146.

"The proof falls far short of establishing that the main purpose in view in the use of the machine by the patentee prior to his application was to perfect its mechanism and improve its operation. On the contrary, it seems to us that it shows that the real purpose in the use was to conduct the business of the manufacture, the improvement and perfection of the machine being merely incidental and subsidiary." 123 U. S. 266, 8 Sup. Ct. 130, 31 L. Ed. 147.

In the case at bar the patentee has failed to show by the clear and convincing proofs required that the sale of the Moodus machine was for experimental use. The only evidence in support of such use is Swain's testimony. He says he told the purchaser at the time "that this was an experiment, and that [he] had been looking for a chance to try it." But the mere intention of the patentee is not sufficient. Experimental use or a sale for experimental purposes is a fact to be proved, and cannot reside in mere intention. If Swain had supplemented his testimony by showing that he at once proceeded, after the Moodus machine was installed, to test its efficiency as compared with outward-discharge machines, or inward-discharge machines without his central partition; if he had made such experiments as he has conducted since this suit was begun, or the best tests he was able to under the circumstances,—the case would be different. The fact is, he made no tests at all. As Judge Lowell says in his opinion in the circuit court, "No experiment was ever made or attempted, and Swain made no attempt to induce Chaffee to alter the pipes." Further, the patentee knowingly set up the machine under such conditions that it was impossible to make such tests as would bring the case within the doctrine of experimental use. Swain knew his patented machine was operative. He was a man of large experience in this art, and he had devoted most of his life to the construction and improvement of turbine water wheels. The only experimental use which could have brought this case within the statutory exception would have been the testing of the efficiency of the patented wheel compared with existing outward or inward discharge wheels. But it does not appear that the patentee ever conducted any experiments to determine the comparative efficiency of the patented machine until after the beginning of the present suit, although subsequent to the sale of the Moodus machine he installed several other like machines. Under all the circumstances, there is a total failure of proof that the sale of the Moodus machine was for such experimental trial as the law contemplates, and which is sufficient to bring the case outside the statutory prohibition.

The decree of the circuit court is affirmed, with costs.