# IN RE MILLS.

---

PATENTS; PUBLIC USE AND SALE OF INVENTION; EXPERIMENTAL USE; SALE FOR EXPERIMENT.

1. While a shop test of a machine may be sufficient to show a reduction to practice, especially in view of favorable results being obtained by a later actual test under the conditions of ordinary use for which the machine is intended, it does not necessarily remove the machine from the domain of experiment, so as to constitute a conditional sale a public sale, under U. S. Rev. Stat. § 4886, U. S. Comp. Stat. 1901, p. 3382.

2. A single unrestricted sale by the inventor of his invention is a public sale, or puts it "on sale," within the meaning and intent of U. S. Rev. Stat. § 4886, U. S. Comp. Stat. 1901, p. 3382.

3. A single sale of an invention by the inventor for experimental purposes, where he is unable otherwise to make proper tests, does not put the invention "on sale," within the meaning of U. S. Rev. Stat. § 4886, U. S. Comp. Stat. 1901, p. 3382.

4. Where a clear case of "on sale" is established, the burden is on the inventor to prove that the sale was for the purpose of having proper tests made, and that the sale was, at least to that extent, a restricted sale.

5. An experimental use of an invention, to be such, need not necessarily be made by the inventor himself, or at his shop.

6. Where it is sought to be shown that an invention was in public use, the applicant is entitled to be heard as a witness in his own behalf.

7. The inventor of an improvement in paper-milling machinery (no proper test of which can be had without putting it into actual use) was employed by a company building such machines, but not using them. He was financially unable to build a machine embodying his invention, and his company was unwilling to construct a machine embodying it until an order for one was received. An order was obtained in December, 1898, and accepted by the company, with the understanding that the inventor was to have no royalty or profit from the machine to be made thereunder; and a sale was made, conditional upon a return of the machine to be constructed if it should prove to be unsatisfactory. The new machine was made, tested in the shop, and shipped, and was tested by being put into actual use by the purchaser in September, 1899. A catalogue dated March, 1899, illustrated the invention, but at that time no such machine had been built and no efforts made to obtain orders based on the catalogue. The inventor applied for a patent April 23, 1901, and his application was rejected by the Commissioner of Patents on the ground that the invention was on sale for more than two years before the application was filed. It was *held* that this was error, the sale, under the circumstances, not having been of such a nature as to bring it within the meaning of U. S. Rev. Stat. § 4886, U. S. Comp. Stat. 1901, p. 3382.

No. 295. Patent Appeals. Submitted March 17, 1905. Decided April 11, 1905.

HEARING on an appeal from a decision of the Commissioner of Patents rejecting an application for a patent on the ground that the invention was "on sale" for more than two years before the application was filed.                    *Reversed.*

The COURT in the opinion stated the case as follows:

From the refusal of the Commissioner of Patents to grant him a patent for an improvement in refining-engines for paper-

pulp the appellant, Melvin A. Mills, has taken this appeal. The refusal is based upon a finding that the invention was "on sale" for more than two years before the application was filed.

The record discloses that the appellant filed this application April 23, 1901, and, at the same time, filed an affidavit in conformity with rule 94 of the rules of practice of the Patent Office, accompanied by a written request that the application be placed in interference with a patent issued November 27, 1900, to Charles E. Torrance, No. 662,746. The affidavit, and the oath to the application, purport to have been executed March 23, 1901. In due time the interference was declared, proofs taken, and a hearing had before the Examiner of Interferences, who rendered a decision of priority in favor of this applicant. An appeal was thereupon taken by Torrance to the Examiners-in-Chief, who, without deciding the question of priority, directed the attention of the Commissioner of Patents, under office rule 126, to facts asserted to amount to a statutory bar against the grant of a patent to Mills, the alleged statutory bar arising out of the invention having been on sale for more than two years before the application was filed. Thereupon the Commissioner directed an investigation of the issue of public use, as well as sale, and testimony was duly taken. At the completion of the testimony, the case was remanded to the primary examiner to consider the evidence in the public-use proceedings, and if he found that the invention had been in public use or on sale for more than two years prior to the filing of the application, to reject the claims. The examiner finding that the statutory bar of public use or sale had not, in his opinion, been proven, the interference proceedings were resumed, and the Examiners-in-Chief awarded priority to Mills, thus affirming the decision of the Examiner of Interferences. From this decision awarding priority to Mills, an appeal to the Commissioner was taken by Torrance. After a hearing upon the question of priority the Commissioner, without deciding that question, held that the evidence disclosed a public sale of the invention, constituting a statutory bar to the grant of a patent to Mills, and thereupon dissolved the interference. The proceedings became *ex parte,*

and formal, from that time, the primary examiner and the Examiners-in-Chief, in turn, refusing a patent to Mills, based upon the statutory bar found by the Commissioner to exist. A *pro forma* appeal was taken to the Commissioner, and from his refusal to grant the patent this appeal was taken. It appears that not only the claims in interference, but all other claims, were rejected; but in view of the position that we take, it is unnecessary to examine, with care, any of the claims, nor to consider any of the assigned errors, for the correction of which the appeal has been taken, save the one based upon the finding that the testimony shows that the invention covered by the claims of the Mills application had been on public sale for more than two years prior to the filing of the application in the sense contemplated by section 4886 of the Revised Statutes, U. S. Comp. Stat. 1901, p. 3382.

The invention claimed is an improvement in the driving end of a Jordan pulp-refining engine for paper making. The statutory bar of public sale relates to one engine which did not go into public use until September, 1899, some nineteen months prior to the filing date of the application. The facts in reference to this engine so far as they are material to the issue may be summarized as follows:

The appellant, Mills, at the times of making his invention and the construction of the engine, was manager of the Emerson Manufacturing Company, which was engaged in making and selling paper-mill machinery, including thereunder Jordan engines. He was not financially able to build a Jordan engine, embodying his invention, nor to put one in operation. He tried in several ways to get one built, but he was naturally dependent upon his employer to incorporate his invention in one of their Jordan engines. The Emerson company would not do this until an order was secured for one of the improved machines. The Nashua River Paper Company gave such an order the latter part of December, 1898, and the Emerson company accepted the order with the understanding that Mills was not to have any royalty or profit from any engine sold by his employer to the Nashua company. The order was also given and accepted upon

the understanding that, should the new engine prove defective in any way, the Emerson company would furnish the Nashua company with one of the regular style, and allow them the difference in price which they were to pay for the engine should it prove all right. The engine was considered an experimental one, and the sale was conditional upon the improvements being of value and working all right, and all defects were to be made right. No proper test of paper-mill machinery can be had without putting it into actual use. Work was commenced on the engine, and it was completed and sent to the railroad freighthouse April 17, 1899. It does not appear when it was received by the Nashua company, but in the ordinary course it appears it would arrive in from four to six days. No other engine was sold until after the first one was tested in September, 1899, and no efforts in that direction were made. A catalogue bearing the date of March, 1899, which is admitted to illustrate and refer to the invention in controversy, is in evidence, but at this time no engine had been built, and after the order for one was received no efforts were made to obtain other orders based upon the issue of the catalogue. The sale was made for the purpose of securing a fair test of the invention. A shop test was made before it was shipped, and while doubtless such a test may be sufficient to show a reduction to practice, especially in view of favorable results being obtained by a later actual test under the conditions of ordinary use for which a machine is intended, it does not necessarily remove a machine from the domain of experiment so as to constitute a conditional sale a public sale under section 4886, U. S. Comp. Stat. 1901, p. 3382. While the engine was at the works of the Nashua company, and before it was put into use, the inventor sent several times to learn if it was in use and with what result, and also went himself for that purpose. Changes were made in the engine, but they were not material ones. We think the evidence establishes the facts above set forth, and that the only question to be considered is whether a machine made and sold under such conditions more than two years prior to filing an application for a patent is the sale contemplated by section 4886 of the Revised Statutes.

*Mr. D. P. Wolhaupter* for the appellant.

*Mr. John M. Coit,* for the Commissioner of Patents:

1. Even if there had been no actual sale, the offer for sale by personal solicitation and printed catalogue would constitute placing the invention "on sale." *Plimpton* v. *Winslow,* 14 Fed. 919; *Covert* v. *Covert,* 106 Fed. 183.

2. The actual sale was not for experimental purposes. *Manufacturing Company* v. *Sprague,* 123 U. S. 256; *Swain* v. *Holgate,* 109 Fed. 154; *Fruit Jar Co.* v. *Wright,* 94 U. S. 94; *Henry* v. *Francestown Co.* 17 Off. Gaz. 569; *Smith & Davis Co.* v. *Mellon,* 66 Off. Gaz. 173; *Delemater* v. *Heath,* 58 Fed. 414.

3. The unsupported testimony of the inventor is not accepted in interferences as "convincing" (*Sharer* v. *McHenry,* 19 App. D. C. 158; *Petrie* v. *De Schweinitz,* 19 App. D. C. 386; *Garrells* v. *Freeman,* 21 App. D. C. 207), and there seems to be no more reason for accepting it here. The same reasons exist for refusing to accept it. There are the same bias and incentive to color the testimony, and the same inability to rebut his allegations as to his purposes and intentions.

Mr. Justice DUELL delivered the opinion of the Court:

What is meant by the term "on sale" as used in the section referred to [U. S. Rev. Stat. § 4886] has been a subject of judicial consideration, and it will be found that the special facts of each case have been controlling in the conclusion arrived at in the special case under advisement.

We may take as established certain general rules, and the main difficulty that arises in this, or any other, case lies in the application of the rules to the facts disclosed. Some of these propositions have been laid down in cases where the question to be determined relates to sale, but the majority of them have related to the question of use. The general principles, however, are in the main applicable, whether the case relates to

"public use" or to "on sale," and in most cases of sale it will be found that the sale had been followed by more than two years' public use. Confining our consideration as closely as possible to the question here directly involved, we consider these two propositions deducible from the enunciations of the courts.

First. A single unrestricted sale by the inventor of his invention is a public sale, or puts it "on sale," within the meaning and intent of section 4886 of the Revised Statutes.

Second. A single sale of the invention by the inventor for experimental purposes, where he is unable otherwise to make proper tests, does not put the invention "on sale" within the meaning of the section.

Third. Where a clear case of "on sale" is established, the burden is on the inventor to prove that the sale was for the purpose of having proper tests made, and that the sale was, at least to that extent, a restricted sale.

The right of an inventor to have a reasonable time for making experiments for the purpose of perfecting his invention or demonstrating its utility has been recognized by all the Federal courts from 1839 down to the present time, and Judge Coxe, delivering the opinion of the circuit court of appeals for the second circuit, in *Eastman* v. *New York,* 134 Fed. 844, has stated this as an established proposition.

In *Winans* v. *New York & E. R. Co.* 4 Fish. Pat. Cas. 1, Fed. Cas. No. 17,864, Mr. Justice Nelson, in charging the jury said: "If the use be experimental, to ascertain the value, or the utility, or the success of the thing invented by putting it into practice by trial, such use will not deprive the patentee of his right to the product of his genius."

In *Birdsall* v. *McDonald,* 1 Bann. & Ard. 165, Fed. Cas. No. 1,434, it is said: "Public use in good faith for experimental purposes and for a reasonable period, even before the beginning of the two years of limitation, cannot affect the rights of the inventor. The objection rests upon the principle of forfeiture, and is not to be favorably regarded."

The Supreme Court in *Elizabeth* v. *American Nicholson Pav. Co.* 97 U. S. 126, 24 L. ed. 1000, recognized this right, and did

not deny it, even in cases like *Egbert* v. *Lippmann,* 104 U. S. 333, 26 L. ed. 755, where it applied the rule of public use in the most drastic manner. In passing, it may be said that in the cases where the courts have found the statutory bar of public use and on sale to exist such use or sale will, almost without exception, be found to have extended over a long period (ten years in *Egbert* v. *Lippmann,* 104 U. S. 333, 26 L. ed. 755), and with many sales as in *Consolidated Fruit Jar Co.* v. *Wright,* 94 U. S. 92, 24 L. ed. 69; and where the invention had meanwhile been generally adopted and the rights of the public had intervened and been appropriated.

In *Swain* v. *Holyoke Mach. Co.* 48 C. C. A. 265, 109 Fed. 154, where many cases on the subject of public use and sale are collated, Judge Colt, speaking for the circuit court of appeals said: "We should hesitate to lay down the broad proposition that a single sale of a patented device for experimental purposes works a forfeiture of the patent under the statute. We do not understand that it has ever been so expressly decided by the Supreme Court."

It will be remembered that in the case at bar but one sale had been made, and that claimed to be a restricted sale and for the purpose of experiment, and that there is no claim of bar of public use, for the application for the patent was made within about a year and a half after the engine was set up and tested. It is also recognized by the authorities that the experimental use of the invention need not necessarily be by the inventor himself, nor at his shop. Recognizing, as he must, that a machine can best be tried under the conditions of ordinary use for which it is designed, it would be absurd to say that to test an engine, or other machine, intended for use in making pulp or paper, an inventor is not at liberty to have the actual trial made in some one else's paper-mill, but he must buy or erect his own mill. It would also be unfair to hold that an employee who had not the means to build a machine, except by permitting his employer to build one containing his invention, and to sell it conditionally and for the purpose of experiment, should be deprived of his invention where he filed his application within

two years from the time of the experimental trial of such machine. *Elizabeth* v. *American Nicholson Pav. Co.* 97 U. S. 135, 24 L. ed. 1005.

Another proposition seems to have been lost sight of in the consideration of this case by the Commissioner of Patents. He considers the fact that the engine was, upon use by the Nashua company, found to be satisfactory so far as the invention is concerned, as tending to negative the claim that the sale was for experimental tests. That no changes in the parts constituting appellant's invention were found to be necessary is wholly immaterial. As the Supreme Court said, in *Elizabeth* v. *American Nicholson Pav. Co.* 97 U. S. 135, 24 L. ed. 1005, in speaking of experimental use, the inventor "may see cause to alter it and improve it, or not. * * * And though * * * he may not find that any changes are necessary, yet he may be justly said to be using his machine only by way of experiment."

Before passing to the application of the law to the facts in the case, three or four minor questions, specially applicable to the correct decision of the question here in issue, may be set out as sustained by authority and based on reason. In *Harmon* v. *Struthers*, 57 Fed. 637, it was held that the statutory bar did not exist, where the patentee derived no profit from the sale, and the device was a mere appendage to a large machine sold by his employer. In *Graham* v. *McCormick*, 11 Fed. 859, the court held that the statutory bar did not exist because the machine was sold for the purpose of trial and was warranted. In *Innis* v. *Oil City Boiler Works*, 22 Fed. 780, it was held that the statutory bar could not be successfully invoked where the machine was sold at an under price, and without profit to the inventor, and for the purpose of securing a fair test of the invention. In *Jones* v. *Sewall*, 3 Cliff. 563, 6 Fish. Pat. Cas. 343, Fed. Cas. No. 7,495, it was held that a use was experimental when it was had to ascertain .the value, utility, or success of the invention by putting it into practice; that it was not such use or sale as would deprive an inventor of his title.

The burden is on Mills to prove that the sale of the machine to the Nashua company was of such a nature as to take it out of

the statute and bring it within the exceptions recognized and stated by the courts in construing section 4886 of the Revised Statutes, U. S. Comp. Stat. 1901, p. 3382. In our opinion he has succeeded, and we believe that no statutory bar exists to the granting of a patent to him through the sale of the engine in question. He is entitled to be heard as a witness on his own behalf in public-use proceedings, and the only question is as to the weight to be given to his evidence. He is corroborated on substantially all material points, and the facts proved have already been set forth. Those facts clearly bring him within the exceptions to the general rule. He was an employee of a company making, but not using, machinery used to make paperpulp. His employer could not put the device to a test in actual use. It was but natural that the employer should be unwilling to make a machine embodying the invention, without first obtaining an order which should provide that if the machine proved satisfactory it would be paid for. Natural, too, that when it had to warrant the machine and replace it, if found unsatisfactory, with one of its standard machines and at a less price, that it should provide that no royalty should be paid Mills for the machine, or for others if sold to the purchaser of the first machine. After that machine was sold nothing more was done, save to build and ship it, and then wait for the results of actual, every-day use. Very unlike other cases where the statutory bar has been successfully invoked. Here was no unlimited number of sales, no indefinite time of use. Had he waited more than two years after the test of September, 1899, the statutory bar of public use might have been successfully invoked, for the machine, so far as the invention goes, was found to be a success. The sale was for experimental purposes, and we think may fairly be found to be a conditional one. Had the machine not proven to be a success, we think it could have been returned, and the extra price paid for the incorporation of the invention into the machine been recovered. To find the statutory bar of "on sale" to be proven in this case within the meaning of the statute would compel us to go beyond the adjudicated cases, and this we are not prepared to do. We are not

prepared to say that an inventor who is compelled to sell a machine, or allow it to be sold, and without any profit to him, and with a warranty given by the manufacturer, and an obligation to substitute another machine for it, should it prove inoperative, all in order that it may be tested under the conditions of every-day use, has not sold it for experimental use, and that the sale is not a conditional one. In arriving at our decision we have taken it as a fact that the sale was made more than two years before the filing of the application. It might be argued with considerable force that the sale was not even a conditional, completed sale until the receipt of the machine by the Nashua company, or until after its acceptance after actual test. In the former case it may be said that the sale would not have been proved beyond a reasonable doubt, and in the latter case there would have been no sale, conditional or otherwise, more than two years prior to the filing of the application. In the absence of proof we have considered a conditional sale for experimental purposes to have been made as of the date of the shipment of the engine.

Forfeiture of the invention cannot, and in fairness should not be, predicated upon the sales relied upon. There was manifest error in the decision of the Commissioner of Patents, and we must reverse his conclusion that appellant is not entitled to a patent for the reason assigned.

It follows from what we have said that the decision of the Commissioner must be reversed, and it is so ordered.

The clerk of the court will certify this opinion and the proceedings of this court in the premises to the Commissioner of Patents, according to law.                               *Reversed.*