## WILKIE v. MANHATTAN RUBBER MFG. CO.

(District Court, D. New Jersey. August 14, 1925.)

**I. Patents ⬤══112(1)—Presumption in favor of decision of Patent Office as to who was inventor of device.**

Decision of Patent Office is presumptively correct as to identity of inventor.

**2. Patents ⬤══91(4)—Evidence held to show prior public use of device was not experimental.**

In suit for infringement of patent covering improved squeeze rolls for wool-washing machinery, evidence held to show that sale and public use thereof prior to patent application was not for trial or experimental purposes.

**3. Patents ⬤══328—No. 900,055, for improved squeeze rolls for wool-washing machinery, held anticipated.**

Burnham patent, No. 900,055, for improvement in squeeze rolls for wool-washing machinery, *held* anticipated by prior public use for more than two years.

**4. Patents ⬤══289—Suit for infringement barred by laches, where not commenced until after 13 years of unprevented infringement, after warning given.**

Suit for infringement of patent *held* barred by laches, where infringement continued thirteen years after warning was given to infringer, without action to enjoin same.

In Equity. Suit by Robert J. Wilkie against the Manhattan Rubber Manufacturing Company. Decree for defendant, dismissing bill.

Harrison F. Lyman and H. L. Kirkpatrick, both of Boston, Mass. (Fish, Richardson & Neave, of Boston, Mass., of counsel), for plaintiff.

Newell & Spencer, of New York City, for defendant.

BODINE, District Judge. This is a suit for infringement of Burnham patent, No. 900,055, issued September 29, 1908, to the Stoughton Rubber Company, as assignee of Burnham, for an improvement in squeeze rolls for wool-washing machinery.

The plaintiff, Robert J. Wilkie, acquired title to the patent by purchase from the Stoughton Rubber Company on June 15, 1922. Mr. Wilkie's first connection with the patent began in 1909, when his company, the Wilkie Rubber Manufacturing Company, of Lynn, Mass., took a license under it. Mr. Wilkie is now connected with the Stowe & Woodward Company, of Newton, Mass., which company manufactures the patented rolls under license from him.

The defendant is the Manhattan Rubber

8 F.(2d)—50

Manufacturing Company, of Passaic, N. J. Its infringing roll is practically identical with the roll of the patent, and originated in a copying of that roll.

The specifications of the patent, so far as pertinent, are as follows:

"This invention relates to squeeze rolls for wool-washing machinery and other apparatus, and it has for its object the provision of a squeeze roll made up of annular sections of vulcanized rubber compound or other suitable material, which are secured upon a shaft or axis upon supporting collars of such construction that slipping of the roll sections is wholly obviated, without the employment of great pressure in clamping the roll sections together. ∴ + ✢

"As will be readily seen, the supporting collars upon which the roll sections are mounted, and between which the roll sections are positively gripped, are positively locked upon the shaft, so that no rotation on the shaft is possible. The corrugated faces of the flanges 8 and the lugs 9 provided thereon obtain a firm hold upon the roll sections, and effectively prevent any distortion of the roll sections, and any circumferential movement thereof on the shaft when in service. Moreover, the parts of the roll are so designed that, in case of injury to one or more roll sections, the parts can be readily removed from the shaft and new sections introduced to replace those that have been damaged."

The single claim of the patent is as follows:

"A squeeze roll, comprising a shaft, a plurality of collars keyed thereon, having inclined seating surfaces for the roll sections and outwardly extending flanges adapted to engage the faces of the roll sections, and a plurality of roll sections supported upon and between said collars, and engaging said inclined seating surfaces; the flanges on said collars having circumferentially corrugated faces for engagement with recessed corrugation on said roll sections and having radially arranged lugs on said corrugated faces engaging the recesses in said corrugations, whereby said roll sections are gripped and locked against rotative movement upon said collars."

The novelty of the invention was in the combination of the radial lugs on the flanges of the metal collars and the corresponding recesses formed in the rubber sections to receive the lugs. The metal collar was keyed to the shaft, the lugs on the metal collar entering into the recesses of the rubber sections,

compelling the rubber sections to rotate with the shaft. The radial lugs are "staggered"; that is, the lugs on one pair of collars are not opposite the lugs on the other collar.

Squeeze rolls in wool washing are subjected to enormous pressure. The rolls themselves weigh from 1,500 to 2,000 pounds. The wool as it comes into the machine is lumpy, and the pressure varies on different portions of the roll. The rolls, prior to the alleged invention, gave a great deal of trouble by bellying out and getting loose on the shaft, and the complaints were numerous. The Burnham roll achieved commercial success. The Clark, the nearest prior art roll, has not been sold since February, 1913. The Clark roll lasted three months, and the Burnham rolls two or three years.

The defenses are: First, that Burnham is not the inventor of the subject-matter of the patent; second, that there was public use and also sale of the invention more than two years before February 2, 1907, the date of application for the patent in suit, by the Pontoosuc Woolen Manufacturing Company and by E. Frank Lewis; third, that the alleged invention attempted to be claimed by the patent in suit is completely anticipated, not only in the disclosures in prior patents, but also in the prior construction marketed by George P. Clark, as well as the prior construction invented and put into public use by E. Frank Lewis; fourth, that the plaintiff is estopped, by reason of the long delay in bringing this suit, from denying that the defendant has an implied license under the patent.

[1] As to the first defense, that Burnham was not the inventor, the court has assumed, the patent having been issued to him, that he was the inventor. It should, however, be mentioned that in 1904, Burnham was the president and general manager of the Stoughton Rubber Company. In the manufacture of sectional rolls he had procured rubber sections from the New York Belting & Packing Company. The iron work was done at the plant of C. G. Sargent's Sons Corporation, of Graniteville, Mass. The Stoughton Rubber Company had in its employ a salesman named Himes. Church was in the employ of the Sargent's Sons Corporation. It is apparent from the record that Burnham did discuss the alleged invention with both Himes and Church, and that Himes collaborated with Burnham about the matter. Both Himes and Church applied for patents on the device. They abandoned their applications. They both testify, however, that they were the inventors. The evidence as to the actual invention is conflicting, each stating that he was the inventor. The presumption is in favor of the decision of the Patent Office.

[2, 3] The patent issued September 29, 1908. The defense of the complete disclosure in the prior art patents need not be considered, since the evidence clearly shows a two years' public prior use by the Pontoosuc Woolen Manufacturing Company at its plant. The law with respect to this defense is stated by Mr. Justice Matthews in Smith & Griggs Mfg. Co. v. Sprague, 123 U. S. 249, at page 257, 8 S. Ct. 122, 126 (31 L. Ed. 141):

"On the other hand, the use of an invention by the inventor himself, or by another person under his direction, by way of experiment, and in order to bring the invention to perfection, has never been regarded in this court as such a public use as under the statute defeats his right to a patent. Shaw v. Cooper, 7 Pet. 292 [8 L. Ed. 689]; Elizabeth v. Pavement Co., 97 U. S. 126 [24 L. Ed. 1000]; Egbert v. Lippmann, 104 U. S. 333 [26 L. Ed. 755]. In this last case it was said (page 336): 'A use necessarily open to public view, if made in good faith, solely to test the qualities of the invention, and for the purpose of experiment, is not a public use within the meaning of the statute.' In Elizabeth v. Pavement Co., 97 U. S. 126, 134 [24 L. Ed. 1000] it was said: 'When the subject of invention is a machine, it may be tested and tried in a building, either with or without closed doors. In either case, such use is not a public use, within the meaning of the statute, so long as the inventor is engaged, in good faith, in testing its operation. He may see cause to alter it and improve it, or not. His experiments will reveal the fact whether any and what alterations may be necessary. If durability is one of the qualities to be attained, a long period, perhaps years, may be necessary to enable the inventor to discover whether his purpose is accomplished; and though, during all that period, he may not find that any changes are necessary, yet he may be justly said to be using his machine only by way of experiment, and no one would say that such a use, pursued with a bona fide intent of testing the qualities of the machine, would be a public use within the meaning of the statute. * * * Whilst the supposed machine is in such experimental use, the public may be incidentally deriving a benefit from it. If it be a gristmill, or a carding machine, custom-

ers from the surrounding country may enjoy the use of it by having their grain made into flour, or their wool into rolls, and still it will not be in public use, within the meaning of the law. But if the inventor allows his machine to be used by other persons generally, either with or without compensation, or if it is, with his consent, put on sale for such use, then it will be in public use and on public sale within the meaning of the law.' "

The rule of evidence with respect to the defense is as stated by Judge Woolley in Wendell v. American Laundry Machinery Co., 248 F. 698, 699, 160 C. C. A. 598, 599, as follows:

"The rule of burden of proof in such cases is so well established and was so fully discussed by the learned trial judge, that elaboration is not necessary. Stated very briefly, it is this: In an attack upon a patent, the patentee may stand on the grant of letters patent, which is prima facie evidence of the patent's validity. In the beginning, no further burden is imposed upon him. The burden of overcoming this evidence of validity by proof of the patent's invalidity because of prior public use and sale, devolves upon the one attacking the patent. This he must sustain by evidence so clear that it leaves no room for doubt. Coffin v. Ogden, 85 U. S. [18 Wall.] 120, 124, 21 L. Ed. 821; Miller v. Handley (C. C.) 61 F. 101; Interurban Co. v. Westinghouse Co., 186 F. 166, 108 C. C. A. 298; Morgan v. Daniels, 153 U. S. 120, 14 S. Ct. 772, 38 L. Ed. 657. If he proves sale of the patented device and use by the public more than two years before the application, by evidence of this character, the statute relieves him from proving the inventor's intention thereby to abandon his invention to the public, and establishes an inference of abandonment of the invention before the grant of the patent, which, unless successfully controverted by the patentee, invalidates the patent subsequently granted. But this inference may be controverted by the patentee, upon whom is then thrown the burden of establishing by full, unequivocal, and convincing proof that such use and sale was not of the completed and commercially operative device subsequently patented, and also that such use and sale was not absolute and unconditional, but was principally and primarily for the purpose of perfecting the incomplete invention by tests and experiments. Swain v. Holyoke Machine Co., 109 F. 154, 48 C. C. A. 265; Id., 111 F. 408, 49 C. C. A. 419; Smith v. Sprague, 123 U. S. 249, 8 S. Ct. 122, 31 L.

Ed. 141; Delemater v. Heath, 58 F. 415, 7 C. C. A. 279; Egbert v. Lippmann, 104 U. S. 333, 26 L. Ed. 755; American Ballast Co. v. Davy, 220 F. 887, 136 C. C. A. 453."

A wool-scouring machine was sold by the Sargent's Sons Corporation to the Pontoosuc Company in December, 1904. The machine was invoiced December 15, 1904, reached Pittsfield December 25, 1904, and was paid for January 16, 1905. The evidence establishes that the sale of the roll was a straight commercial transaction, and there is not a word of evidence that the Pontoosuc Woolen Manufacturing Company had a concept that the machine was purchased so that it might be experimented upon. The Sargent Corporation, who sold the roll, reserved no rights to test. The rolls were entirely satisfactory, and on January 25th the Pontoosuc Woolen Manufacturing Company wrote the Sargent Company, asking them where the rolls were made, and stated: "We wish to get * * * the ring rolls, such as you furnished us in the new machine." The Stoughton Company rebuilt several rolls for the Pontoosuc Company in accordance with the alleged patent. About five rolls were used continuously until the summer of 1909, when one of them was sold to the Manhattan Rubber Company, who purchased this roll for the purpose of a defense, if suit were brought upon the patent. There is not a word of evidence that the Pontoosuc rolls were ever examined, or that any tests were ever made of them.

The Stoughton Rubber Company, after notifying the Manhattan Rubber Manufacturing Company, on April 21, 1909, that they were infringing the Burnham patent, did nothing further. Of course, Burnham testified that they had the intention, when they sold the rolls to Pontoosuc, to see if they gave satisfaction; but from this circumstance an experimental use cannot be spelled out. The first sale of the new rolls was made to Pontoosuc, and the manufacturer, of course, hoped that the new rolls would give satisfaction; but there is nothing to show that the Pontoosuc people knew that an experiment was being made, nor is there any evidence in the record that indicates that such was the fact.

Some of the witnesses say that, if the first rolls had not worked satisfactorily, the Rubber Company would have felt it incumbent to supply others. This is no more than ordinary business practice, but it cannot make an experimental use. The manufacturer al-

ways expects that the machine he builds will give satisfaction, unless it is built in accordance with the design of the buyer.

Then there is testimony that in' the sale to Thomas Wolstenholme Sons & Co., the Sargents wrote, "We trust they will see fit to try one of the rolls;" but this sale, which was not made to Wolstenholme Sons & Co., cannot indicate that the sale made to Pontoosuc was a trial sale, or a sale for the purpose of experiment.

Then there is correspondence of December, 1904, between the Sargents and the Stoughton Rubber Company as to a guaranty of the rubber. This correspondence, however, does not show that the Pontoosuc sale was for the purpose of experiment. Since the evidence so clearly shows that the sale to the Pontoosuc Company was not for the purpose of experiment, but that the machine was put in public use and sale more than two years before the patent was applied for, upon this defense the bill must be dismissed.

It is unnecessary to discuss the prior art patents and the prior public use by E. Frank Lewis at Lawrence, Mass. There is testimony, however, that about 1898, Mr. Lewis, finding the Clark rolls a failure, placed projections on the metal rolls, which dug into the rubber to prevent slippage.

[4] As to the defense of laches, reference has been made to a letter of April 21, 1909, written to the Manhattan Rubber Manufacturing Company, in which it is notified of the patent and warned not to infringe. On June 15, 1922, the plaintiff in this suit acquired the rights of the Stoughton Rubber Company and brought his suit in May of 1923. Of course, the president of the Stoughton Rubber Company says that he did not know the Manhattan Rubber Company was infringing his patent. The letter, he says, was sent as a matter of precaution. There is the circumstance that it is said that the only way the discovery could be made that the patent was being infringed would be by cutting open the rolls. However, it seems useless to infer that the Stoughton Rubber Company did not know of the alleged infringement. The Manhattan Rubber Company took the letter in the only possible way, as a threat of suit, and purchased one of the early Pontoosuc rolls for the purpose of defense. Fourteen years elapsed between the threat of suit and the actual commencement of the action, and the action was not commenced until after the patent had been acquired by Wilkie.

The District Court said, in. Searchlight Horn Co. v. Victor Talking Machine Co., 261 F. 395, at page 404: "Long acquiescence, however, in the infringement of the exclusive right conferred by the patent, will bar the enforcement of the exclusive rights." This must necessarily be so, where the assignee steps into the picture after 13 years of unprevented infringement after warning given.

The bill will be dismissed.