UNITED STATES PATENT BUTTON, RIVET, NEEDLE & MACHINE MAN-UF'G CO. (PLATT v.). See Case No. 11,-222.

## Case No. 16,793.

UNITED STATES RIFLE. ETC., CO. et al. v. WHITNEY ARMS CO. et al.

[14 Blatchf. 94;[1] 2 Ban. & A. 493; 11 O. G. 373.]

Circuit Court, D. Connecticut. Jan. 22, 1877.[2]

APPLICATION FOR PATENTS — ABANDONMENT — LACHES—PUBLIC USE.

1. C. applied for a patent in January, 1859. The application was rejected in February, 1859. No appeal was taken. In February, 1860, the application was withdrawn, and the balance of the fee was refunded. In May, 1868, C. filed a new application, which was rejected on the ground of abandonment. This decision was affirmed by the commissioner of patents, and his decision was reversed by the supreme court of the District of Columbia. The commissioner then declined to issue the patent. After the passage of the patent act of July 8, 1870 (16 Stat. 198), a new application was filed, and the patent was issued, it being for "improvements in breech loading guns." During the 8 years from 1860 to 1868, C. obtained 22 patents on his own application, 9 of them relating to breech-loading fire-arms, and though, during a part of the time, he was poor, and in debt, and in ill health, he prosecuted his other inventions with energy. During the same interval patents were granted to others embodying his inventions: *Held*, that, under section 35 of said act of 1870, which provides that, upon the hearing of the renewal, provided for by that section, of an application before rejected or withdrawn, "abandonment shall be considered as a question of fact," the decision of the commissioner on the question of abandonment is not final, but may be reviewed in a suit brought on the patent.

[Cited in Woodbury Pat. Planing Mach. Co. v. Keith, Case No. 17,970. Cited in brief in Fassett v. Ewart Manuf'g Co., 58 Fed. 364.]

2. No laches could be imputed to C. after May, 1868.

[Cited in Colgate v. W. U. Tel. Co., Case No. 2,995.]

3. His invention was abandoned before May, 1868.

[Cited in Colgate v. W. U. Tel. Co., Case No. 2,995; Kittle v. Hall, 29 Fed. 514; United States Electric Lighting Co. v. Consolidated Electric Light Co., 33 Fed. 871.]

4. The use of an invention for mere competitive examination, experiment, and test, is not a public use.

In equity.

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, reprinted in 2 Ban. & A. 493, and here republished by permission.]

[2] [Affirmed in 118 U. S. 23, 6 Sup. Ct. 950.]

Frederic H. Betts and George Gifford, for plaintiffs.

Benjamin F. Thurston, for defendants.

SHIPMAN, District Judge. This is a bill in equity, to restrain the defendants from an alleged infringement of letters patent [No. 126,446], granted to John W. Cochran, on May 7th, 1872, for "improvements in breech-loading guns." The plaintiffs are the owners of the patent, and E. Remington & Sons, for whose benefit the suit is brought, are the exclusive licensees thereunder. The answer of the defendants denies infringement upon their part, and also denies novelty of invention upon the part of the patentee, and alleges that the application of the said Cochran for a patent was filed on May 6th, 1868, and that, for more than two years prior to said date, the invention had been in public use and sale, with the consent and allowance of said Cochran, and that, prior to the said date, the invention had been abandoned to the public.

Mr. Cochran's application for a patent was made on the 11th of January, 1859, and was rejected February 8th, 1859. No appeal was taken from the original rejection by the primary examiner, and, on February 20th, 1860, the application was withdrawn, and twenty dollars, the balance of the patent office fee, was refunded to the applicant. On May 6th, 1868, Mr. Cochran filed a new application, which was rejected upon the ground of abandonment. The decision of the board of examiners was affirmed by Mr. Fisher, who was then commissioner, whose decision was reversed by the supreme court for the District of Columbia. The commissioner then declined to issue the patent, but, after the passage of the patent act of July 8, 1870 (16 Stat. 198), a new application was filed, and the patent was issued by the successor of Mr. Fisher. During the interval of eight years between the first rejection and the second application, Cochran obtained twenty-two different patents upon his own application, nine of which patents relate especially to breech-loading firearms. He was constantly occupied after 1859, and especially during the war of the Rebellion, in endeavors to perfect and to bring to the favorable notice of the war department and of the public, his inventions other than the one which is now in controversy. He sold, in the year 1865, an English patent for another breech-loading firearm, for the sum of $18,000 (of which sum $5,000 was spent in making models and procuring foreign patents), and went to England, on two occasions, for the purpose of introducing that weapon to the foreign market. He was, during a portion of this interval, very poor, in debt, and in ill health, and his habits were irregular, but he was prosecuting his other inventions with constancy and energy. There is no evidence that any arm embodying the invention in controversy was ever constructed by Mr. Cochran, or by any person on his behalf. Neither is there any evidence

that he ever sought means to renew his application, or that he said or did anything which indicated his idea that this invention was to be pressed, or was to be or become available to him. On the contrary, he apparently acquiesced in the action of the patent office, and entirely turned his attention to other inventions. He died on January 2d, 1873. Patents were granted to James Stillman in 1865, and also to Laidley & Emory in 1866, for improvements in fire-arms, which are embodied in the gun of the defendants, and constitute its peculiar features. It was said by Commissioner Fisher, in his opinion upon the second application, that the primary examiner reported that the devices mentioned in the first and second claims of Cochran's specification were found in eighteen patents which had been granted between 1860 and 1868. I have no means of verifying the truth of this statement.

As I think that the principal question in the case is in regard to the validity of the Cochran patent by reason of abandonment, or by reason of laches and want of diligence in procuring the patent, to the injury of the intervening equities of other inventors and patentees, I do not enter into the question of novelty, but assume that Cochran's invention was not anticipated by the persons named in the answer; and also assume, what was not seriously denied, that the Whitney gun contains, in substance, the Cochran invention.

The second application, which was rejected in 1869, was renewed after the passage of the patent act of July 8, 1870 (16 Stat. 198). The 35th section of this act provided, that, "when an application for a patent has been rejected or withdrawn prior to the passage of this act, the applicant shall have six months from the date of such passage to renew his application, or to file a new one; and, if he omit to do either, his application shall be held to have been abandoned. Upon the hearing of such renewed applications, abandonment shall be considered as a question of fact." Prior to the passage of this act, the practice of the patent office in regard to the granting of renewed applications for patents, after the lapse of years from the date of their previous rejection or withdrawal, was not uniform. It had been held that the withdrawal of an application, and the neglect to prosecute it within a reasonable time, was an abandonment of the invention. The contrary had been held both by the patent office and the courts. Inventors, whose applications had been rejected, were desirous of renewing them, and it was proper both that some limitation should be placed upon the time within which the new applications should be made, and that some stable principle should be adopted in regard to the question of abandonment. The section provided that this question should be regarded as a matter of fact, that lapse of time should not of itself be conclusive evidence of abandonment, but that the decision of each case should depend upon its peculiar circumstances, as a question of fact, and not of law.

Both parties, while uniting in this construction of the 35th section, differ materially in the effect to be given to the decision of the commissioner upon a renewed application, which was made subsequent to the passage of the act. The plaintiffs contend that this decision is conclusive upon the question of abandonment, and is not open to review collaterally, while the defendants insist that a patent granted upon a renewed application is still open to the same attacks which can be made upon any other patent.

The decision of the commissioner in regard to the questions which have been committed to his exclusive jurisdiction is final. His decision is conclusive in regard to the sufficiency and competency of the formal acts and proofs which the statute provides shall be a prerequisite to the issuing of a patent. He is, moreover, made the tribunal which is to decide both in regard to the existence of those facts upon which a reissue is to be granted, and upon which an extension of patents issued prior to March 2d, 1861, is to be made. By the 32d section of the act of 1870, he is to judge of the sufficiency of the reasons for delay, exceeding two years, in prosecuting applications which shall be thereafter made. Upon these three subjects which are submitted to him, his decision is conclusive. The statute also provides (section 24), that an inventor of an improvement not known or used by others in this country, and not patented, or described in any printed publication, in this or any foreign country, before his invention, and not in public use or on sale, for more than two years prior to the application, unless the same is proved to have been abandoned, may obtain a patent therefor; and (section 61), that, in an action for an infringement, or a suit in equity for relief against infringement, the defence of abandonment may be pleaded. The granting of a patent is prima facie, but not conclusive, evidence that the right to the invention had not been surrendered to the public. I am of opinion that the decision of the commissioner in regard to abandonment, upon renewed applications which were made under the 35th section, has no higher authority or more enlarged scope than his decision upon the same question upon an original application, and that all the defences which the statute authorizes, may be made as well in respect to patents granted upon applications renewed after the act of 1870, as in respect to those issued upon original applications. The question is, simply, whether the 35th section gave the commissioner the exclusive jurisdiction which is conferred upon him in the cases which have been mentioned. His decision upon a renewed application, prior to the act of 1870, had no conclusive effect. The provision, that "abandonment shall be considered as a question of fact," when it is admitted that

the object of the provision was primarily to make a distinction between questions of law and of fact, hardly confers upon the commissioner an exclusiveness of jurisdiction which he did not previously have, and which he has not since had upon any other class of applications.

The question of abandonment being, then, one of fact and now open to examination, it is plain that no laches can be imputed to Cochran after May 6th, 1868, and that the consideration of the question is confined to the eight years subsequent to his withdrawal of the first application. It is also true, that lapse of time, per se, constitutes no abandonment, and that upon the defendants rests the burden of clearly establishing, by affirmative evidence, a positive and actual abandonment, or such laches as clearly to indicate an intent to abandon. It may be also considered as true, that the original application is conclusive evidence that, at its date, the inventor did not intend to give his invention to the public, but it is not conclusive evidence that he did not subsequently conceive such intention, or that he was not subsequently guilty of such neglect in obtaining a patent, that he ought not to have a monopoly to interfere with the equities of those who did anticipate him in giving the public the benefit of their inventive skill and labor.

In considering this question of fact, the court is deprived of aid from the testimony of the inventor, who died in 1873. There is, also, an absence of the usual evidence from the declarations or the acts of the inventor in regard to his invention; and the court has, therefore, to consider only the evidence which the undisputed facts on the one side or the other disclose, and the inferences from those facts. The application was withdrawn in 1860, and was not renewed until eight years had elapsed. In the meantime, Mr. Cochran's attention was directed to other kindred inventions, and to inventions of cartridges, shot and shell, for which he solicited and obtained twenty-two patents in this country. From his letters, which tell, also, a sad story of poverty, it appears that his mind was constantly engaged in these various patents, and his energies were constantly directed to their development. If it could be shown that his poverty was a reason for his not renewing and pressing an application for this particular invention, such testimony would tend greatly to dispel the idea of laches; but poverty did not deter him from entering into the necessary expenses which his other patents required, and from devoting himself energetically to obtain a recognition of their merits from the government and from the public. His want of means was not, apparently, the cause of his not seeking to place the invention in its present position. He was absorbed in the attainment of success in the enterprises which occupied his mind, to the exclusion of this invention,

which he did not regard as of as much value as the others. In the meantime, during the war of the Rebellion, inventive skill was greatly stimulated in regard to the perfection of breech-loading fire-arms, and the attention of other inventors than Cochran became engaged in the same line of thought and experiment which he had originally entered upon. In brief, the case shows that Cochran made an invention, and an application to the patent office, which, upon its rejection, he voluntarily withdrew, and for eight years neglected to renew, while he devoted himself to other inventions. He could have obtained a patent for this improvement, or he could, at least, have kept his application in the office. Meanwhile, his invention is patented by others, and is finally introduced to the public in the year 1867, by the present licensees, when Mr. Cochran presents it again to the patent office. The new petition did not, of itself, sever the second application from the first. Smith v. Dental Vulcanite Co., 93 U. S. 486. But the acts and conduct of Mr. Cochran show that the proceedings to obtain a patent, which were originally undertaken in 1859, had been abandoned, and that there was no apparent intent, at the time of the withdrawal, to file a new petition, but there was an acquiescence in the decision of the patent office. There was no continuity in the two applications.

The case presents very different circumstances from those which are disclosed in Smith v. Dental Vulcanite Co. [supra], in which case the original application was never withdrawn, but, from the date of the third rejection, in February, 1856, until March, 1864, when the successful petition was again presented, it is found that the inventor did not remit his efforts, but did everything in his power to obtain a patent, and no act amounted to an acquiescence in the rejection. In this case there was a withdrawal of the first application, the efforts to obtain a patent were remitted, nothing was done towards that end, there was an apparent acquiescence in the rejection, there was a devotion of the thoughts and energies of the inventor to other pursuits, a cessation of active interest in the invention, and a relinquishment of any attempt to perfect his title thereto.

A person "may forfeit his rights as an inventor by a wilful or negligent postponement of his claims, or by an attempt to withhold the benefit of his improvement from the public until a similar or the same improvement should have been made and introduced by others." Kendall v. Winsor, 21 How. [62 U. S.] 322. If there was no purpose on the part of Cochran to withhold his improvement from the public, there was a negligent postponement of his claims until after other inventors had acquired equities, which it seems unjust to destroy. The language of Judge Woodruff in Consolidated Fruit Jar Co. v. Wright [Case No. 3,135], though not neces-

sary to the decision of that case, is just and is pertinent to the facts which are here disclosed: "If an inventor, without substantial reason or excuse, abandons the use of his invention, and for nine years sleeps on his rights, and in the meantime, others, in good faith, employ their industry, skill and money in producing the same thing, and give the public the benefit thereof, putting it into extensive use and on sale, such a state of facts not only warrants the inference of abandonment by the first inventor, but it also creates, as between him and the others, the same equity as would arise if such others had gone further and taken out a patent. Whether the device be patented, or has 'gone into use without a patent,' should make no difference. Kendall v. Winsor, 21 How. [62 U. S.] 322. This is not because lapse of time, per se, deprives an inventor of his right, but because the circumstances giving character to the delay indicate abandonment; and, also, because the intervening rights of others make it inequitable that he should thereafter be permitted to assert any such exclusive title to the invention." To the same effect is the case of Marsh v. Sayles [Case No. 9,119].

I find no adequate evidence of public use by any one for two years preceding the date of the final application. Even if one of the guns, which was presented for competitive examination by the board of army officers at Springfield, in the year 1865, embodied the Cochran invention, it does not appear to me that the submitting of an invention to the test of examination by experts in competition with other inventions is the public use to which the statute refers. A use for the mere purpose of competitive examination, experiment and test is not a public use.

Let a decree be entered dismissing the bill.

[Upon an appeal to the supreme court, the decree of this court was affirmed. 118 U. S. 23, 6 Sup. Ct. 950.]