### SINCLAIR and others *v.* BACKUS.

*(Circuit Court, D. Massachusetts.  ——, 1880.)*

1. PATENT No. 45,344, granted to D. M. Moore in December, 1864, for an improvement in wrenches, *held* valid.

In Equity.

LOWELL, C. J.    The patent of D. M. Moore, No. 45,344, was granted in December, 1864, upon an application filed October 1, 1864, for an improvement in wrenches. The patented tool is a wrench with a double-faced ratchet-wheel connected with two pawls, which are controlled by a lever and springs. The springs tend to keep the pawls in contact with both faces

of the ratchet, and when the lever is central or out of use the pawls lock both faces of the ratchet-wheel, and leave the wrench rigid like the old form of that tool. By moving the lever to the right the pawl on that side is disengaged, and the ratchet-wheel is free to move to the right, but is rigid in the other direction, and so, conversely, when the lever is moved to the left the pawl on this side is disengaged. The claim is for "the combination in a wrench of the ratchet-wheel, B, containing the socket for seizing the work, with the detents, [pawls,] b, b, and lever, g, so constructed as to lock the ratchet against rotation in any direction, and also to lock it at will so that the implement may be worked as a right-hand or left-hand wrench without removing it from the work, substantially as described."

The defendant uses the ratchet-wheel with the spring, pawls, and lever precisely like Moore's, in a bit-stock which is adapted to receive various tools. Upon inspection I cannot doubt that one was copied from the other. The plaintiffs' expert testifies that this part of the defendant's bit-stock operates like a wrench, and that wrenches are often used to work taps, which are tools for turning screw threads. These statements are not denied, and, if true, there is no doubt that the defendant uses the plaintiffs' wrench, with additions, and infringes the patent.

There are, however, two questions of fact which affect the validity of the patent. Three witnesses declare that they used a wrench which would operate as a right or left hand ratchet-wrench, or as a rigid one; and they reproduce from memory a model which they say is substantially like it. It is true, and is creditable to them, that they do not undertake to verify the reproduction as precisely like the original. This tool is known in the record as the Coggeshall wrench, and the original has not been seen for about 20 years. Supposing the model to represent the original, the question is whether Moore made a patentable improvement upon it.

The Coggeshall tool had two wheels rigidly united, with their cogs facing different ways, two pawls with suitable springs, which made the wrench rigid when both were operating, and a rotary cam, by the action of which either pawl

might be thrown out of connection with its wheel. This wrench could be used in the three modes of Moore's, and is the only wrench before Moore's which had so great a capacity, and was at the same time wholly automatic. It had a separate wheel for each set of ratchets, instead of a double-faced wheel, and its lever or cam for moving the pawls was much inferior to Moore's, because the latter takes fixed positions, and is locked in each, while Coggeshall's might be turned too far, or might turn back, and would need constant attention to keep it in the required place. I have no doubt that these differences would make Moore's invention patentable, if Coggeshall's had been patented. Whether, when a patentee has made an original invention, which is confessedly an improvement upon all old machines, he is conclusively presumed to have known every lost and forgotten machine in the line of his art, and therefore must prove invention over the best of them, as he undoubtedly must be presumed to know of any machine which fully embodied his invention, I am not prepared to say. The patent may be held good for precisely what Moore invented, which is precisely what the defendant uses.

The other question of fact is whether Moore publicly used his wrench before the first day of October, 1862; that is to say, more than two years before he applied for his patent. Moore swears that he invented the tool in 1859, at Philadelphia, where he was then employed, and used one there openly a great many times, and afterwards at Hartford, and lastly at Windsor, his home, to which he returned about November, 1861. He was not cross-examined; why, I do not know. Witnesses have been called to give such negative evidence as they might in relation to all the places at which Moore says he used that wrench. He is not corroborated, excepting as to the use in Windsor. The patent was issued upon his written statement that he had not made such use as he now swears to, and was sold under an implied obligation to disclose any such defect in his title. If what he now testifies is true, he has committed a fraud on the public, and on his assignees; and I do not think I ought to regard his testimony of much

weight, except as it is confirmed by others. I think, upon the evidence, I ought to lay out of the case the alleged use in Philadelphia and Hartford.

Moore returned to Windsor in the autumn of 1861, and four witnesses are called to prove that he used, and lent to others for use, a wrench like that of the patent, before October 1, 1862. It is very difficult for witnesses to fix within a month or even a year the exact time of an occurrence of no importance to themselves, to which their attention is called after the lapse of 16 or 17 years. This difficulty, inherent in the subject, must be fully overcome by one who assails a patent. Another question which always arises is whether the use was within the limits of a justifiable test or experiment. I have read the evidence with great care, and am satisfied that Moore did not make a wrench for sale until within two years before his application. As the value of his invention was not for his personal use, as is often the fact with manufacturers who improve a machine used in their particular business, so much as for the sale of the tools or the royalties, I consider this fact very important. The chief witness to prior use, E. F. Spaulding, gives a deposition which is clear and candid; but he had told one of the plaintiffs, a very short time before he testified, that he had no means of fixing the date, and could not fix it. This he very fairly admits, and he does not explain how his memory has been refreshed. Besides, the evidence of this witness, while it is not wholly consistent with itself upon the other point, yet leaves upon the mind an impression that the use which he testifies to was experimental. Such is the fair result of his evidence at pages 235 to 237 of the record. And so of the only other witness whose means of knowledge were considerable, Edminster. The point which the defendant takes as to the use by Edminster is that Moore permitted him to try the wrench in order to induce him or his father to take an interest in it, and help Moore in procuring a patent. The witness so puts it. But I consider it too nice a point to say that the future patentee, when he permits a person to test his tool by a short use with a view to interest him in its being patented, is not testing his tool, but only the

mind of the borrower. I do not know that an inventor is bound to satisfy his own mind alone by his experiments. The question to be determined is not only whether the tool will work, but in what modes and with what advantages over old tools; how well it will work and how cheaply; and I am of opinion that he may, in such a case as this, test not only its patentability, but the degree of it, if I may so say; that is, whether it is worth while to patent it. I must not be understood as speaking of a case in which the tool or thing patented has been sold more than two years before the application.

Decree for the complainants.