### SARFERT CO. v. CHIPMAN et al.

(Circuit Court, E. D. Pennsylvania. September 27, 1910.)

#### No. 25.

1. PATENTS (§ 328*) — ANTICIPATION — PROCESS AND MACHINE FOR SINGEING FABRICS.

   The Sarfert patents, No. 667,142, for a process of treating hosiery by singeing, and No. 758,937, for a stocking singeing machine for practicing such process, are void for anticipation by an unpatented machine and process in commercial use for some two years before the claimed invention by the patentee.

2. PATENTS (§ 328*)—INVENTION—PROCESS OF TREATING HOSIERY.

   The Sarfert patent, No. 667,140, for a process of treating hosiery to produce a silk or lisle finish by first roughening the fabric, and then singeing it, is merely for the employment in succession of two known and used processes, and is void for lack of invention.

In Equity. Suit by the Sarfert Company against Frank Chipman and others. On final hearing. Decree for defendants.

E. Hayward Fairbanks, for complainant.
Henry N. Paul, Jr., and Joseph C. Fraley, for respondents.

J. B. McPHERSON, District Judge. Three patents granted to Max Sarfert are embraced in this suit. They belong to the art of singeing fabrics, and two of them, Nos. 667,140 and 667,142, are concerned with processes. The other, No. 758,937, relates to a machine. They were all applied for in March, 1900, and the process patents were granted in January, 1901. The machine patent did not issue until May, 1904, although the application had been filed four years earlier, and the date of the invention seems to have been March, 1898. This delay in the office was caused by interference proceedings with Robert

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Meyer, who had been granted a patent in January, 1900, on an application filed in March, 1899, but was finally decided to be a later inventor than Sarfert. The defendants admit infringement of certain typical claims of each patent, and rest their case upon lack of novelty, anticipation, and prior use. To understand the situation, it is necessary to examine the state of the art when Sarfert entered the field.

The purpose of singeing any fabric is to remove the nap or fuzz from the outer surface in order to produce a smooth and silky finish. In one form or another the process is well known, and has probably been practiced for at least a hundred years. The earliest reference to which my attention has been called is the case of Hall v. Boot, 1 Webster's Patent Cases, 97, a report published in 1844. This suit was brought on an English patent granted to Hall in 1817 for "a method of improving every kind of lace or net, or any description of manufactured goods whose fabric is composed of holes or interstices made from thread or yarn as usually manufactured, of every description, whether fabricated from flax, cotton, wool, silk or any other vegetable, animal, or other substance whatsoever." The specification is in part as follows:

"The object of my invention is to remove from every kind of lace or net, or other goods of the description above mentioned, all superfluous and loose fibers, or ends of fibers, which are not so bound and twisted into the thread or yarn of which the lace or net or such other goods is composed, as to form a part of the solid body thereof. These superfluous fibers do not contribute to the strength of the thread or of the lace or net or such other goods as aforesaid, but form a kind of fur or wool around the threads, which makes them appear thicker than they really are, and also fills up the meshes, holes, or interstices, of the lace or net, or such other goods as aforesaid, and makes them appear indistinct and woolly. My method of improving lace or net, or such other goods as aforesaid, is by passing them through, or at a very small distance over, a body of flame or fire, produced by the combustion of inflammable gas, while the said flame, or the intense heat thereof, is urged upwards, so as to pass through the holes or meshes of the lace or net, or such other goods as aforesaid, by means of a current of air which is produced by a chimney fixed over a flame immediately above the lace or net, or such other goods as aforesaid. The action of the flame is to burn, singe, and destroy as much of the said superfluous fibers or fur as may be removed without injury to the lace or net, or such other goods as aforesaid.

"A long piece of lace or net, or such other goods as aforesaid, or several pieces united together so as to form a large sheet, is made to pass between two rollers mounted one over the other, like the rollers of a flatting mill, and the lace or net, or such other goods as aforesaid, are further to be extended over other rollers so as to spread part of the lace or net, or such other goods as aforesaid, in a horizontal position. Beneath this part the flame is applied, and the rollers being turned round will cause the lace or net, or such other goods as aforesaid, to pass through or at a very small distance above the flame, so that every part of the piece shall in succession be subjected to the action thereof, and the velocity of the movement must be so regulated that the superfluous fibers of the lace or net, or other goods as aforesaid, will be acted upon in its passage through or over the flame, without having time to injure the lace itself.

"It must be obvious that the rapidity of the motion must depend upon the nature of the lace or net, or such other goods as aforesaid, and the intensity of the flame. It is of course impossible to give any general description of the motion that will be applicable to different cases; a slight trial, however, will be sufficient in each instance to ascertain and regulate the velocity. A regular and uniform motion will of course be most convenient and advantageous. The operation may be repeated as often as is found necessary to effect the required

improvement of the lace or net, or such other goods as aforesaid, and the operation will be most readily effected if the two ends of the piece are united together, so as to form an endless band, which, being extended over a system of rollers, will circulate about the said rollers when they are turned round, and so every part of the endless band will pass and repass continually through or over the flame. The apparatus for the production of the inflammable gas may be the same which is well known, and in use for the purpose of illumination. The gas is to be conducted in pipes to the machine, and to enter into a tube which is placed horizontally beneath the lace or net, or such other goods as aforesaid; when the lace or net, or such other goods as aforesaid, has been sufficiently operated upon by the flame acting on one side, the piece is reversed, and the other side is subjected to the action of the flame."

The reporter goes on to state:

"The witnesses for the defendants proved that the flame of charcoal, of waste paper, wood, shavings, or common pit coal had been used for many years to singe the fibers from silk, cotton, or lace sleeves, but the articles for this purpose had been placed on a wooden leg or a sleeve board. That bellows had been used to force the flame against the article, which it was said would produce the effect of burning the interstices."

Another patent to Hall was granted in 1823 for "a certain method of improving lace, net, muslin, calico, or any other description of manufactured goods whose fabric is composed of holes or interstices, and also thread or yarn as usually manufactured, of any kind, whether the said manufactured goods, or the said thread or yarn, be fabricated from flax, cotton, silk, worsted, or any other substance whatsoever." The specification explains with even more clearness than in the earlier patent what the inventor desired to accomplish:

"The object of this my invention is a more complete and expeditious method than any hitherto practiced of clearing articles fabricated of cotton, silk, wool, linen, and other similar materials, whether such are in the state of thread or yarn, or are manufactured by weaving, netting, knitting, or any other mode into fabrics composed of threads crossing over or connected with each other, so as to leave between them holes or interstices great or small, even so small as to be imperceptible to the eye, but through which flame or air heated thereby can be drawn. The clearing of the articles aforesaid is produced by burning or singeing off those loose fibers, or ends of fibers, which, not being bound or twisted into the thread or yarn, but standing out from it, give it a rough, woolly, and indistinct appearance; and this burning or singeing off of the fibers is effected by causing flame, or air heated thereby, to surround or penetrate the articles aforesaid, in such manner as to remove the loose or superfluous fibers, without at the same time injuring the body of the thread or yarn. The result of this process is that the thread or yarn acquires a clear, distinct, wiry, and round appearance, which adds greatly to the beauty of the lace, net, muslin, calico, or any other species of goods as aforesaid into which it may be made either previously or subsequently to the process of clearing, and thereby renders the articles more perfect and saleable. The heat that I commonly make use of for this purpose is that produced in the combustion of inflammable gas, and the apparatus or machinery that I employ in giving motion to the thread or yarn, or to the goods manufactured thereof, as also that employed by me in conducting the inflammable gas into the horizontal perforated pipes where the combustion takes place, likewise the aforesaid horizontal perforated pipes themselves, are similar to those set forth in the specification of my patent of November 3, 1817, for improving lace, net, etc., and therefore, to the exclusive use of the whole of the aforesaid apparatus or machinery I lay no claim in this patent. But my present invention consists in an improved current of air, and an apparatus, the object of which is to supersede the use of the chimney described in my aforesaid patent of November 3, 1817," etc.

Stockings, gloves, caps, shawls, etc., are spoken of as among the articles to be operated on, and one of the drawings shows a stocking in outline upon the machine. The inventor also had in mind the obvious advantage of singeing both sides of an article at one operation, and refers to it as follows:

"I also find it advantageous, when the fabric or texture is not too close, to place the draft pipes so as to draw the flame from the burners, either downwards or in an oblique direction; and, when both sides of a web are required to be cleared by one operation, draw one line of flame upwards and another downwards, whereby the goods, in their revolution or passage between them and the draft pipes, are cleared on both sides by one operation."

In 1876 another British inventor, James Cross, took out a patent for "a method of and apparatus for singeing woven fabrics at the selvages only." He states that:

"Hitherto such fabrics have been singed over the entire surface, or, when desired to be singed at the selvages only, this has been very imperfectly performed by hand by means of gas jets and a flexible tube."

He desired to singe at the selvages only, but the point to be noted especially is that he shows two sets of gas burners, one on each side of the cloth, and refers expressly to this feature in his first claim:

"The method hereinbefore described of singeing the selvages only of woven fabrics by causing them to pass through or in contact with flames from gas burners (or other suitable flames) arranged along both sides of the fabric as it is drawn through the machine."

In the United States a patent was granted to Ewen and McKenzie in 1868 for "improvements in singeing woven fabrics," and the specification describes, inter alia, two rows of burners, each acting on one side of the fabric. In 1886 John Ryle obtained a patent for an "improvement in machines for singeing ribbons and other fabrics," the object of the invention being to "provide a simple, cheap, and reliable means for the removal of fuzz, loose, and straggling films, from ribbons or other fabrics."

The foregoing references show very clearly the condition of the art toward the end of the last century. It was certainly not new to singe the fuzz from a stocking, although novelty might be shown in a particular device intended to accomplish this result; but the knowledge that woven fabrics could be "cleared"—to use Hall's word—by the application of flame had been common property for many years. Apparently, however, stockings had not often been subjected to the process. People were content to tolerate a more or less fuzzy surface on these articles of dress (which were of course for the most part not visible), and the stimulus of a popular demand for improvement was therefore lacking, especially in this country which was then importing nearly all the better grades of hosiery. These grades, however, began to be manufactured here about the period just referred to, and at the same time the Hermsdorff process of dyeing fast black came into general use. One of the steps in this process increased the natural roughness of the stocking, and helped to fix attention upon the objectionable fuzz. About the same time Thomas West accidentally discovered that these fiber ends could be removed by attrition—the so-called "rum-

bling"—and that cotton threads could thereby be given a finish like silk or linen, and this was an additional fact that compelled the trade generally to look for a satisfactory solution of the problem. That the old and well-known method of burning the fibers off was an obvious expedient receives confirmation from the fact that it occurred without delay and independently to several minds, as the testimony in this case satisfactorily establishes.

It appears, therefore, that the use of heat or flame to singe the outer surface of fabrics was old, and that a machine to singe both sides of a fabric at one operation was also old. If now we turn to Sarfert's patents, it will be plain, I think, that his contribution to the art probably requires benevolent consideration before any of it can be described as patentably new. The process patent No. 667,142 is confined to hosiery, but this limitation is of no importance. Hosiery is merely a class among fabrics, and the earlier patents included hosiery and many other articles. Even Sarfert himself does not claim to have discovered anything new in this part of the field except the fact that stretching a stocking will separate the threads, and will thus enable a flame or other singeing medium to reach all, or nearly all, the fibers forming the nap. To speak of such a fact as new seems to me a misuse of terms. Neither is it easier to discover invention when his method of stretching is examined. The method had long been used for the precise purpose of separating the threads. He himself describes it as "a board or frame of the kind familiar to those skilled in the art of dyeing which serves to stretch or distend the stocking so that its threads are separated or pulled apart." This board was used to stretch stockings so that the dye-stuff might more thoroughly reach their interstices, and it can hardly be said to be invention to stretch a stocking in the same way on the same board in order that the same interstices may be reached by a flame as were reached by the dyeing liquid. This combination of two old steps—stretching and singeing—is variously described in the 10 claims of the patent. Three of them are selected by the complainant as typical:

"5. The herein-described process for treating hosiery which consists in stretching the same on a former, whereby said hosiery is retained in substantially a right line during the act of singeing, and then singeing the same."

"9. The herein-described process of treating hosiery which consists in abnormally stretching the fabric in every direction, whereby substantially every portion of the fiber forming the nap or lint can be reached by a singeing agent, next singeing said hosiery, and lastly allowing the hosiery to assume its normal or unstretched condition.

"10. The method of singeing a stocking, which consists in supporting and stretching or distending said stocking from within, with its outer surface exposed, and then subjecting said surface in such condition to a singeing agent."

The machine patent No. 758,937 is inseparably connected with the foregoing process patent. It has 22 claims, but the complainant lays stress upon six:

"10. In a stocking-singeing machine, burner-tubes arranged to direct their flames toward each other, a suitable former over which the stockings to be singed are stripped, whereby the threads or fibers thereof are stretched or spread apart, the means for bodily moving said former and surrounding stockings between the flames of the burner-tubes, substantially as described.

"11. In a stocking-singeing machine, a pair of burner-tubes arranged to project jets of flame in opposite directions, a suitable former over which the stockings to be singed are stretched and by which they are supported in a flat condition, and means for feeding said former and surrounding stockings through the jets of flame, whereby both sides of the stocking are singed at one operation."

"14. The combination in a machine for singeing the outside of hollow or tubular articles, of movable means for supporting the article from within, and singeing means situated on opposite sides of the path of said article-supporting means to apply the singeing means to the article.

"15. In a machine for singeing the outside of hollow or tubular articles, such as stockings, means for supporting the article from within and in a flat condition, and singeing means for applying the singeing agent to both sides thereof, said means being relatively movable."

"17. In a machine for singeing the outside of hollow or tubular articles, such as stockings, burners arranged to direct their flames toward each other, a form that is adapted to be inserted within the article to be singed, said burners and form being relatively movable in a path that will bring the burners on opposite sides of the form."

"19. The combination in a machine for singeing the outside of hollow or tubular articles, such as stockings, of means for supporting the article from within, and means for singeing the outside of said article."

The specification declares that the invention relates to "the art of singeing textile fabrics," and that it consists of "a machine for singeing the outside or outer surface of hollow or tubular articles—such, for instance, as hosiery—for the purpose of removing the fuzz, nap, or lint from the outer surface only thereof, and thus to impart to the article a finished appearance." The novel features are thus described in general terms:

"For the purpose of illustrating my invention I have shown a machine for singeing hosiery, as this example best illustrates the principle of my invention, and since my invention has been particularly designed for singeing hosiery and in accordance with the broad principle thereof I employ two principal instrumentalities—namely, means for supporting the stocking or other article from within and, second, a singeing means, these two means being preferably relatively movable, so as to apply the singeing means to the outside of the stocking to singe substantially the entire outer surface thereof. It is obvious that these principal instrumentalities of which my invention consists can be variously arranged and organized, and in the accompanying drawings I have shown one simple embodiment thereof which I have found in practice to be successful and which consists in employing two burners arranged to project their flames toward each other, a pair of driven rollers situated next to these burners, so that when a stocking and a form placed therein to hold said stocking flat is inserted between these rollers said form and surrounding stocking is projected between the burners and the outside of the stocking or its entire outer surface is subjected to the singeing agent, although it is understood that my invention is not limited to this specific arrangement and organization of these instrumentalities."

The specific description of the machine adds nothing important, and it seems clear, therefore, that no element among those claimed is new. Singeing means had been long in use, whether in the form of one gas burner or two. Driven rollers were a well-known device for moving an article along; and a board or frame to support the stocking from within was also old. Even the combination of the patent is old with the single exception of the stocking on the board. That element, although old in itself, does not appear in any previous combination, unless perhaps in the second patent to Hall, and it is this element alone

that can rescue the patent if it can be rescued at all from the charge that no patentable invention is disclosed. As it seems to me, however, it is very difficult to find invention in this use of the well-known stretching board, and, unless invention can be found at this particular point, the two patents now under consideration must certainly fall. I do not hesitate to say that, if no other question was presented for decision than the novelty of these patents, I should decide it against the complainants; but I pass it without formal decision because I believe the defense of anticipation has been established by evidence of unusual cogency, and I prefer to rest the decree upon this ground alone.

I am aware of the legal rules in reference to the defense of anticipation, and I fully agree with the reasons on which they rest. Their purpose is to compel great caution in weighing the testimony, but where the rules have been obeyed, and the defense is nevertheless established, the conclusion is more satisfactory than in the ordinary case. In the present controversy I think the testimony measures up to the full requirements. It is clear. It is detailed and specific. It comes from credible and disinterested witnesses. It is of ample volume, and it is corroborated in important particulars. Moreover, taken as a whole—and this I think is a matter of great value—it produces the irresistible effect of truthfulness. I have read with attention the several hundred pages that bear upon this point, and in my opinion no one who repeats that experiment can escape the conclusion that the two patents now under consideration were anticipated by a prior use that has been proved beyond any reasonable doubt. The facts are briefly these: In the latter part of 1896 the process of stretching stockings upon a board or former, and then exposing them to a gas flame for the purpose of singeing the exterior fibers, was used by the firm of Morgan & Menzies, then engaged in business in Wilkes-Barre, Pa. The purpose was to use it commercially, and within a very short time—before January, 1897—a machine was built to do this work. It was no doubt crude in certain respects, but it contained all the essential elements of the Sarfert machine, except that only one burner was used. A second burner, however, was added not long afterwards—as I think before April, 1897, although the date is not particularly important, as there would be no invention in merely adding a second burner—and the machine thus equipped continued to do satisfactory work in singeing stockings for the market. It was used steadily until 1899, when it was replaced by a second machine of a somewhat different pattern, but not essentially different in those elements that are now important. The first machine had driven rollers, and these in connection with an apron stretched over them carried the boarded stockings over the perforated burner. After the second burner was added, the boards were carried between the two flames so that both sides of the stocking were singed at one operation.

It is unnecessary to review the testimony in detail. The facts just outlined are the ultimate facts in dispute, and, as I have already said, they seem to me to be established beyond any reasonable doubt. If I am correct in this belief, the two patents now being considered have been fully anticipated; for the complainant does not claim an earlier date than June, 1897, for the process patent, and March, 1898, is the

date of the invention embodied in his machine. It may perhaps be added that both parties are required to prove their relevant facts by proof of a high quality—the defendant, because of the rules already referred to; and Sarfert, because his patents were not applied for until 1900, and both the process and the machine had already come into very general use during the two years preceding.

The complainant argues at considerable length that what was done by Morgan & Menzies was no more than an abandoned experiment. This position was practically forced upon the complainant, for he was obliged to admit that a machine of some kind for singeing boarded stockings had been made and used at Wilkes-Barre in 1896 and the early part of 1897. This admission made it necessary to avoid the effect of these dates, and an obvious expedient was to take the position that what was done was a mere experiment which came to nothing and was soon given up. I can only say in reply that in my opinion the testimony does not support the argument. It shows that from the very beginning the machine, although doubtless somewhat crude in construction, did the work for which it was intended, and supplied its owners with all the singed stockings needed for use in their business. Just how many does not appear with precision, but it must have been hundreds, and perhaps thousands, of dozens.

The remaining patent, No. 667,140, is also for a process, and I believe it to be void for lack of invention. Its object is to give a silk or lisle finish by singeing hosiery or knitted goods, and the patent is intended to be very broad, as the following paragraph from the specification will show:

"I have found that by singeing hosiery and other fabrics a smooth finish and fine surface and luster can be produced, but that to secure this result it is necessary prior to singeing to subject the goods to such treatment that the nap or fiber thereof is brought to such a condition that substantially every portion thereof can be removed by singeing, whereby said improved finish, surface, or luster is produced. It is obvious that the nap and fiber can be removed to a certain extent by singeing without any such special treatment beforehand, but, as far as I am informed, singeing the goods without the treatment to which I refer does not impart the finish which I secure, and although in the following specification I set out specifically one way in which my process can be successfully carried out, yet I claim broadly, as my invention a process of treating hosiery and other fabrics which consists, first, in subjecting the fabric to treatment that brings the nap or fiber to a condition, or which effects a condition, of the nap or fiber whereby it can be more readily and effectually removed by singeing, and then singeing such fabric. The treatments by which such a condition of the nap or fiber is effected may differ, and the treatment which I have selected for the purpose of illustrating my process is chemical; but, as before set forth, my invention is not restricted to any specific treatment to which the goods are subjected, but to a process that embraces the step of treating the fabric to effect a condition of the nap or fiber whereby it can be more readily removed by singeing and in then singeing."

There are seven claims, but the first four are relied on by the complainant as typical:

"1. The herein-described process of treating hosiery and other fabrics, which consists in, first, subjecting the fabric to treatment to increase the combustibility and inflammability of the fibers forming the nap or lint, and then singeing said fabric.

"2. The herein-described process of treating hosiery and other fabrics, which consists in, first, subjecting the fabric to treatment to increase the com-

bustibility and inflammability of the fibers forming the nap or lint, then singeing said fabric and then finishing the same.

"3. The herein-described process of treating hosiery and other fabrics, which consists, first, in subjecting the fabric to chemical treatment to effect a condition of the nap or fiber whereby the same is more readily and effectually removed by singeing; then singeing the fabric; and then finishing the same.

"4. The herein-described process for treating hosiery and other fabrics, which consists in singeing the fabric while in a state of oxidation; and then finishing the same."

The chemical treatment referred to is not Sarfert's invention at all. It is simply a step in the Hermsdorff process of dyeing fast black, and one of the results of taking this step is to increase the fuzziness of the stocking. This increasing fuzziness is not chiefly caused, or perhaps caused at all, by the application of the aniline black solution referred to in the specification, but is due to the fact that the stockings are beaten in a machine called a tom-tom in order to insure complete saturation, and the beating roughens the surface by breaking some of the fibers. After this step the stockings are green in color, and as the next and final step is to dye them black it is, I think, plain enough that, if singeing is to take place at all, this is the precise time when it must be done. To singe after the fast black has been produced impairs the color, and, of course, it would be absurd to singe before the green stage has been reached, because the process of dyeing the stocking inevitably results in producing more fuzz, and this would need to be singed off by a second operation. To perceive this fact seems to be within the range of a limited intelligence, and not to require the exercise of the inventive faculty.

A decree may be entered in accordance with this opinion, dismissing the bill with costs to the defendant.