### SARFERT CO. v. CHIPMAN et al.

(Circuit Court of Appeals, Third Circuit. January 23, 1912.)

#### No. 1,503.

1. PATENTS (§ 328*)—ANTICIPATION—PROCESS AND MACHINE FOR SINGEING HOSIERY.

The Sarfert patents, No. 667,142, for a process of singeing hosiery after it has been distended on a stocking board, and No. 758,937, for a singeing machine, are both void for anticipation by prior use.

2. PATENTS (§ 328*)—INVENTION—PROCESS OF TREATING HOSIERY.

The Sarfert patent No. 667,140, for a process of singeing hosiery "in the green," or after it has been saturated with an oxidizing solution, is void for lack of invention.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

194 F.—8

Suit in equity by the Sarfert Company against Frank L. Chipman and others. Decree for defendants, and complainant appeals. Affirmed.

For opinion below, see 181 Fed. 518.

E. Hayward Fairbanks and Hector T. Fenton, for appellant.

Henry N. Paul, Jr., and Joseph C. Fraley, for appellees.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

LANNING, Circuit Judge. On March 10, 1900, Max Sarfert filed his application for a patent upon a machine for singeing the outer surfaces of hosiery for the purpose of giving it a smooth or lisle-thread finish, and on March 13, 1900, he filed another application for a patent for processes and products relating to the singeing art. The first of these applications resulted in the issue on May 3, 1904, of patent No. 758,937 for a singeing machine. The second of them was subsequently divided, and resulted in the issue on January 29, 1901, of patent No. 667,140, for a process of singeing hosiery after it has been saturated with an oxidizing solution, and patent No. 667,-141, for a stocking having its outer surface singed, and patent No. 667,142, for a process of singeing hosiery after it has been distended on a stocking board. Of these four patents the defendants are in the present suit charged with infringing three of them, No. 758,937, No. 667,140, and No. 667,142. The Circuit Court decided that claims 10, 11, 14, 15, 17, and 19 of patent No. 758,937, and patent No. 667,142, are null and void because of prior use, and that patent No. 667,140 is null and void for lack of novelty. Consequently the bill of complaint was dismissed.

[1] The numerous claims involved in the suit may be seen by reference to the opinion of the Circuit Court in 181 Fed. 518. We shall not quote them here. Nor shall we give any extended review of the proofs contained in the large record. The case has had our careful consideration, and we are of the opinion that it was properly decided in the court below. The art of singeing laces, hosiery, and other fabrics for the purpose of giving them a finer or glossier finish was no new thing in 1900. As far back as November 3, 1817, an English patent was issued to J. S. Hall for a "method of improving every kind of lace or net, or any description of manufactured goods whose fabric is composed of holes or interstices made from thread or yarn, as usually manufactured, of every description, whether fabricated from flax, cotton, wool, silk, or any other vegetable, animal or other substance whatsoever." After stating, in his specification, that the object of his invention was to remove from fabrics of the kind above mentioned the loose ends of fibers which are not twisted into the thread or yarn of the fabric so as to form a part of the solid body thereof, and which gives the fabrics a furry or woolly appearance, he said:

"My method of improving lace or net, or such other goods as aforesaid, is by passing them through, or at a very small distance over, a body of flame or fire, produced by the combustion of inflammable gas, while the said flame, or the intense heat thereof, is urged upwards, so as to pass through

the holes or meshes of the lace or net, or such other goods as aforesaid, by means of a current of air which is produced by a chimney over a flame immediately above the lace or net, or such other goods as aforesaid. The action of the flame is to burn, singe, and destroy as much of the said superfluous fibers or fur as may be removed without injury to the lace or net, or such other goods as aforesaid."

This patent was before the King's Bench for adjudication in 1822. In the report of it, contained in Webster's Patent Cases, page 100, it is said that as cotton lace, which had come to be largely manufactured in Great Britain, "had the disadvantage of being covered with a species of wool" which gave it a "fogginess in its general appearance to the great diminution of its value," it occurred to some that "this defect might be removed by the action of heat, which had been already applied to removing the same kind of unevenness from muslin, by passing it over rollers of hot iron, *and from mitts and stockings by singeing.*" The report further states that witnesses for the defense had proved that the flame of charcoal, paper, shavings, etc., had been used for many years "to singe the fibers from silk, cotton, or lace sleeves," and that the articles for this purpose "had been placed on a wooden leg or a sleeve board."

Hall's patent and the report of the adjudication upon it are alone sufficient to show that the singeing of a stocking for the purpose of removing the loose ends of the fibers that project from the body of the yarn of which the stocking is made, and thereby giving to the stocking a finer finish, was an art well known in 1822. The report also shows that it was then common to singe the fibers from lace sleeves while distended on a board.

Another English patent, No. 4,779, was issued to Hall in October, 1823, for an improvement upon the one of November 3, 1817, in which he refers to the singeing of stockings as well as other articles. Certainly there could have been no invention, after 1823, in singeing stockings while distended by means of an interior support. The counsel for the appellants in a very able brief contend that the Hall patents disclose only the art of singeing goods in an unstretched condition, and that up to 1897 the art of singeing stockings, while stretched or distended by means of an interior support, was never practiced in this country. But, conceding for the purpose of the argument that this contention is sound, we have before us, not only the disclosures of the Hall patents, but those of the report of the litigation in which the first Hall patent was involved. The disclosures of the two patents supplemented by those of the report were accessible to all interested persons in this country, and they told those skilled in the art of singeing stockings everything that process patent No. 667,142 tells them. Consequently, we find that patent anticipated by prior use.

If the machine patent No. 758,937 is the embodiment of inventive genius, it is not of Sarfert's genius. Sarfert was anticipated by Morgan & Menzies. It is not claimed that Sarfert's machine was constructed before March, 1898, and it was not until March 10, 1900, that his application was filed. The application was bitterly opposed by Robert Meyer in two interference proceedings, and, as already stated,

the patent was not granted until May 3, 1904. Those contests, however, have no bearing upon the present question, since Morgan & Menzies were not parties to either of them. We are satisfied that tubular articles, such as sleeves and stockings, had been singed while distended on boards in England for 75 years when the Sarfert application was filed. The art in this country prior to the Sarfert application shows various machines used for singeing purposes. Previous to December, 1896, Morgan & Menzies had had their stockings dyed and finished by Thomas West. West's method of finishing was by rumbling, a process which produced a fine finish, but which it is not necessary now to describe. It was an expensive process because it frequently resulted in great damage to the goods. West, unwilling to assume longer the risks of the business, notified Morgan & Menzies that he would no longer finish their goods. This was probably in the month of December, 1896, and thereupon Morgan & Menzies began the construction of their first singeing machine, which they put into use certainly not later than January, 1897. They improved it by the addition of a second burner as early as April, 1897, and they used it for singeing stockings, distended on boards, from April, 1897, until the construction of a new double-burner machine in 1899. The new machine was then used until its destruction by fire in 1900. It is true that the witnesses for the defendants differ as to the number of rollers in this new machine, but that it and the machine preceding it each had two burners, that they each singed stockings distended on boards, and that they were used by Morgan & Menzies, the first from April, 1897, to the early part of 1899, and the second from 1899 until it was destroyed by fire in 1900, is established by the weight of the testimony on the subject. The appellant company is quite right in its contention that the defense of prior use, to be valid, must be clear, convincing, satisfactory, and free from reasonable doubt. The Barbed Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 450, 36 L. Ed. 154. But here the rule of evidence in that regard has been fully complied with. In speaking of the nature of the evidence adduced by the defendants on the question of anticipation of the process patent No. 667,142, and the machine patent No. 758,937, the learned judge of the Circuit court, in language which we quote as expressive of our own views, said:

"In the present controversy, I think, the testimony measures up to the full requirements (of the legal rules in reference to the defense of anticipation); it is clear; it is detailed and specific; it comes from credible and disinterested witnesses; it is of ample volume; and it is corroborated in important particulars. Moreover, taken as a whole—and this, I think, is a matter of great value—it produces the irresistible effect of truthfulness."

We agree with him that the machine patent is void because of prior use.

[2] The process patent, No. 667,140, is for singeing hosiery "in the green." In carrying out the process the goods are saturated in a solution known as "aniline black solution," then dried, then placed on a former or board, and then singed by being passed through a singeing machine. "The particular solution to which I have above referred," says the patentee in his specification, "is an oxidizing or

mordanting solution, and after the goods are dried, after being saturated therein, they are in a state of oxidation, and in drying the goods turn to a greenish hue." This step in the manufacture of hosiery, however, was not new. Mr. William Secher, an expert witness for the complainant, on cross-examination, testified as follows:

"Q. First, about patent 667,140. It is true, is it not, that the so-called oxidizing solution is the ordinary aniline black solution which is commonly used in the dyeing art as the first step in the process of dyeing goods a fast black? A. It is true.

"Q. Do you find that this patent 667,140 anywhere tells you this? A. On line 52, of page 1, of the printed specification of patent No. 667,140, the statement is made that the oxidizing solution is known as aniline black solution.

"Q. Please tell me whether this statement is substantially correct. Stockings, after they are knit and before they are dyed, are said to be 'in the gray.' As the first step to dye them aniline black they are subjected to a mordanting solution, called aniline black solution, as a result of which they turn to a greenish hue. They are then said to be 'in the green.' As the final step of the dyeing process they are subjected to another solution as the result of which the goods are given their final fast black color. And Sarfert's patent, No. 667,140, claims as a process the singeing of stockings while they are in the green in order to give them a so-called lisle finish? A. That statement is substantially correct, according to the description and claims of this Sarfert patent."

Saturating the goods in an aniline black solution was one of the well-known steps in dyeing a fast black. To subject the goods after this step had been taken to a flame for the purpose of singeing them involved no invention whatever.

The decree of the Circuit Court will be affirmed, with costs.