## MASSIE v. FRUIT GROWERS' EXPRESS CO.

District Court, D. Delaware.  March 14, 1929.

No. 673.

Leonard G. Hagner, of Wilmington, Del., and James A. Watson (of Watson, Coit, Morse & Grindle), of Washington, D. C., for plaintiff.

John Biggs, Jr., of Wilmington, Del., and William G. Henderson and Carl H. Richmond, both of Washington, D. C., for defendant.

MORRIS, District Judge.  All the claims of patent No. 1,588,948, granted to Edward A. Downey, June 15, 1926, on an application filed March 6, 1925, are here in issue.  The device called for by the claims is a hinge connecting the several panels of slatted racks, used upon the floor of fruit and vegetable cars to allow better ventilation and refrigeration, so as to permit the folding of the panels face to face or back to back.  The plaintiff, John A. Massie, trustee, is Downey's assignee.  The defendant, Fruit Growers' Express Company, though conceding that it has manufactured and used for its ventilating racks the identical hinge of the claims, nevertheless denies liability therefor.  It plants this denial upon three grounds: (1) That David McEwan, not Downey, was the inventor; (2) that the device was in public use before March 6, 1923; and (3) that the defendant has an implied license or shop right.

During the fall of 1922 the defendant decided to begin the general use of floor racks

in its cars. No hinge then in use for connecting the panels was found entirely satisfactory. The employees became interested. On April 28, 1923, McEwan, foreman in charge of the installation of the racks, and Downey, mill carpenter, filed a joint application for a patent for the hinge now used by the defendant. Patent No. 1,476,397 issued to them December 4, 1923. Thereafter, Downey, conceiving that McEwan's contribution was not of the character to make him a co-inventor, applied for, and, after decision in his favor in the interference declared between his sole application and the joint patent, in which proceedings McEwan appeared, obtained the patent in suit. By reason of these facts the plaintiff takes the position that the doctrine of Morgan v. Daniels, 153 U. S. 120, 14 S. Ct. 772, 38 L. Ed. 657, applies in the case at bar, and that the finding of the Examiner of Interferences, from which McEwan did not appeal, must here prevail against defendant's contention that McEwan was the inventor, unless that finding is overcome "by testimony which, in character and amount, carries thorough conviction." Defendant counters with the contention that as it was not a party to the interference, and as McEwan is not a party here, the decision of the Patent Office is without bearing upon the present issue. Sarfert Co. v. Chipman, 194 F. 113, 116 (C. C. A. 3). The difference between the parties upon this subordinate question is one of degree only. It is obvious that no estoppel runs against the defendant. Decisions of the Patent Office upon the issue of originality and priority are never final, even with respect to the parties to the interference proceeding. They are subject to examination by the courts. Reckendorfer v. Faber, 92 U. S. 347, 352, 354, 355, 23 L. Ed. 719. Yet such decisions, even when they do not come literally within the scope of Morgan v. Daniels, cannot do otherwise than in some, though varying degree, depending, among other things, upon the number of the administrative tribunals concurring in the decision, Stonemetz Printers' Machinery Co. v. Brown Folding-Mach. Co. (C. C.) 57 F. 601, 604, affirmed 58 F. 571 (C. C. A. 3), the character and amount of the evidence there adduced and the extent to which the decision itself carries conviction, add to and strengthen the presumption attaching to a patent granted ex parte that the patentee is the inventor of its subject-matter.

The true question here, as in all cases of this character, is whether the evidence in opposition to the patent is or is not sufficient to overcome that, including the presumption of validity, presented in its favor.

■ The evidence is conflicting. Downey testified that in January, 1923, when the matter of obtaining a suitable hinge was one of general interest among defendant's employees, he made a pencil sketch of the hinge on a board, here in evidence, showed it to McEwan, explained to him its mode of operation, and that on the following Monday McEwan, defendant's foreman in charge of its floor racks, brought in on a cardboard, now lost, a drawing of that hinge. That the pencil sketch upon the board in evidence fully illustrates and discloses the subject-matter of the invention is, apparently, neither questioned nor open to question. McEwan, however, denies that Downey exhibited to him the pencil sketch or made to him any suggestion with regard to the hinge. He asserts that he conceived the hinge and made his sketch without any aid whatsoever from any one. Each states that the other was permitted to join in the application for the joint patent solely because of that other's assistance in obtaining the patent. There is no other direct evidence upon this issue. In defendant's view the circumstantial evidence, consisting of the subsequent conduct, behaviour, and acts of the two men, is reconcilable only with the story of McEwan. But when it is remembered that McEwan was the foreman in charge of the racks and that Downey was a mill carpenter having nothing to do with racks, the difference in their conduct seems entirely consistent with their respective tasks, without regard to whether the hinge was the invention of the one or the other.

Regardless of McEwan's present recollection of the matter, I am convinced that the finding of the Examiner of Interferences, that Downey invented the hinge, made a complete disclosure of his invention to McEwan, and that McEwan's drawing was merely a reduction of Downey's disclosure to the precise dimensions required for use with lumber of the size employed for the racks, was entirely correct.

■ Was the hinge in public use before March 6, 1923? Late in January or early in February of that year, soon after the completion of his drawing, McEwan with Downey's knowledge caused two hinges to be made in defendant's blacksmith shop, to be attached to two sections of floor rack and their utility or practicability for defendant's purposes tested, or, to use Downey's term, "demonstrated," in defendant's yard in the presence of Anderson, the company's mechanical engineer, Smith, the shop superintendent, Schulze, the general foreman, McEwan, Downey, and one or two others con-

nected with the company. At this test the rack sections were folded face to face and back to back. The hinges worked satisfactorily in every particular. The test, so far as it went, was completely successful. No injunction of secrecy was placed by Downey upon McEwan or any other person present at the test. These undisputed facts, the defendant contends, make a clear case of public use more than two years before the date of Downey's application for his sole patent, and hence a bar to the validity of the patent obtained upon that application. The use was in public and by the public. It was a public use within the contemplation of the statute unless it was experimental, conducted in good faith to test the qualities of the invention, and for no other purpose not naturally incidental thereto. Viewed from the company's standpoint, the use was, manifestly, purely experimental. The two hinges tested were the first that were made in accordance with Downey's invention. The use was of two hinges, not of a full set of sixteen required for a car. Their use was not in a car, but in the yard near the shop. The vital question, however, is not whether the use was an experimental one from defendant's commercial viewpoint, but whether it was experimental and not public within the meaning of the patent statutes. The question seems no longer an open one. In many cases it has been decided that a use in public for experiment or test is not a public use within the acts of Congress, nor a use evincing a dedication of the invention to the public. Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000. In United States Rifle, etc., Co. v. Whitney Arms Co., 2 Ban. & A. 493, Fed. Cas. No. 16793, Judge Shipman declared: "It does not appear to me that the submitting of an invention to the test of examination by experts in competition with other inventions is the public use to which the statute refers. A use for the mere purpose of competitive examination, experiment and test is not a public use." Judge John Lowell, in Sinclair v. Backus (C. C.) 4 F. 539, held that a use is not a public use in a patent sense where, in order to test its comparative as well as its absolute utility, and in order to convince others of its merits, an inventor permits them to try, by use, his invention after he has himself become satisfied that it is useful. In Pennock v. Dialogue, 4 Wash. (C. C.) 538, Fed. Cas. No. 10941, it was expressly decided that, "It is clearly immaterial whether the experiment be made by himself, or by others." I think defendant's use of the two hinges was not of

a character to destroy the validity of the patent.

Some time later the defendant equipped the racks for one of its cars with a full set of sixteen Downey hinges, made at its blacksmith shop, placed the racks so equipped in the car, and then "released" the car for use in the usual manner. With respect to this car two questions arise: First, was this use of the Downey hinge before or after March 6, 1923; and, second, was this use an experimental or a public use? Defendant was unable to produce any record, or other written evidence, identifying the car that was so equipped or fixing the date the hinges were made or put in the car. To establish that this use was more than two years before the date of Downey's application, the defendant is compelled to rely upon oral testimony.

Five witnesses, testifying more than five years after the event, fix the date upon which a car was first equipped with racks connected by the Downey hinge as February, or late January, 1923. The only aids to their memory are the recollection that the equipment of the car with the hinge was within a short time, a week or ten days, after the inspection of the racks in the yard, and a further recollection that it was before the completion of a certain car shed that was finished between the middle and the 25th of February, 1923. I do not question the honesty of a single one of these witnesses. Yet, before a court is permitted to find a prior public use, it must be satisfied "by evidence so cogent as to leave no reasonable doubt in the mind of the court that the transaction occurred substantially as stated." Deering v. Winona Harvester Works, 155 U. S. 286, 301, 15 S. Ct. 118, 124 (39 L. Ed. 153). Human memory is far from infallible. In the matter of dates experience has found it especially imperfect. Brooks v. Sacks, 81 F. 403 (C. C. A. 1); McArthur v. Sears, 21 Wend. (N. Y.) 190, 192; Goble v. Grant, 3 N. J. Eq. 629, 633. Other things being equal, the clarity and certainty of memory with respect to an occurrence vary with its recency. It is well known that memory frequently tends to confuse the dates and relative times of the happening of similar or related events. To require the unaided memory to fix with absolute precision the particular month in which a certain event took place more than five years past imposes upon it a task for which it is seldom equipped. Again, it is not possible to conclude with reasonable certainty that the association of the completion of the car shed and the Downey hinge in the minds of the witnesses did not arise from the advent

of the Downey hinge and the yard test of the two hinges, rather than from the equipment of the first car with that hinge. Moreover, there is affirmative evidence that casts doubt upon the accuracy of the recollection of defendant's witnesses. One Demory became an employee of the defendant company on March 12, 1923. He was put to work on floor racks. The first hinges attached by him were another type known as the "Gascoigne," that was then being generally used by the defendant. Later he went to the blacksmith shop with McEwan, got a full set of Downey hinges, put them on racks for a car. Sweeley, Schulze, Smith, and Anderson went down to look at them. The racks were then put in the car. The defendant contends that this was not the first full set of Downey hinges, but another and later set. Their inspection by the company's mechanical engineer, the shop superintendent, the mechanical superintendent, the general foreman, and others casts grave doubt upon the accuracy of this contention.

Again, the Downey hinge was not put in general use by the defendant until June, 1923. It seems obvious that any one or more blacksmith-made sets put in use in cars prior to that time were so used for experimental purposes. I think the patent in suit is valid.

I find no premises of fact upon which a conclusion that the defendant has an implied license or shop right can be based. It is true that at the time he made and disclosed the invention to the defendant, Downey was one of its employees. His work, however, was that of mill carpenter. It had nothing whatever to do with floor racks or floor-rack hinges. In no sense can it be said that his invention was made in the course of his employment. Nor did he use the time or property of his employer either to develop or to put his invention into practical form. The most that can be said is that he permitted the defendant to make and experiment with the hinge in order that they might be convinced, as he already was, of its merits. He did not assent to the use of the hinge by his employer. The company was notified of the application for the joint patent and its grant.

Soon after its grant an offer to sell it to the company was made and refused. Later, in September, 1925, the company prepared an assignment to it of the shop rights under the patent. Downey and McEwan refused to sign it. Downey was told that he could have "until four o'clock to think it over." He construed this to be a discharge and left the company. At defendant's request he returned and has since continued in its employ. His attitude with respect to his monopoly has not been different since the granting of the patent in suit. Downey has received from the defendant nothing whatever in time, money, or materials for his invention, and he has done nothing to estop him from denying that defendant has a shop right. I think it has none. Solomons v. United States, 137 U. S. 342, 346, 11 S. Ct. 88, 34 L. Ed. 667.

The prayers of the bill of complaint must be granted.